USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/09/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                           :
SKYLINE STEEL, LLC,                                 :
                                                                           :
                                   Plaintiff,                         :            13-CV-8171 (JMF)
                                                                           :
           -v-                                                           :           <u>MEMORANDUM OPINION</u>
                                                                           :                  <u>AND ORDER</u>
PILEPRO, LLC,                                         :
                                                                           :
                                   Defendant.                     :
                                                                           :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        In this heated patent case, familiarity with which is assumed, Plaintiff Skyline Steel ("Skyline") brings claims against Defendant PilePro, LLC ("PilePro") arising out of PilePro's public assertions that Skyline is infringing one of its patents (the "'543 Patent"). This Memorandum Opinion and Order addresses two of seven pending motions: (1) PilePro's motion to stay Skyline's claims of noninfringement and patent invalidity pending the Patent and Trademark Office's ("PTO") decision on PilePro's recently filed reissue application (Docket No. 132);[1] and (2) PilePro's motion to strike a declaration by its former attorney, Matthias Weigel, that Skyline submitted in connection with its opposition to PilePro's motion (Docket No. 176). For the reasons explained below, PilePro's motions are both DENIED.

---

[1]      PilePro states that it limited its stay motion to Skyline's noninfringement and invalidity claims because it intends to seek an order compelling arbitration on the remaining claims, but no such motion or petition to compel arbitration has been filed. (Def. PilePro LLC's Mem. Supp. Mot. To Stay Pending Reissue Patent (Docket No. 132) ("Def.'s Stay Mem.") 1). In any event, for such an application to succeed, PilePro would have to show that it has not waived whatever right to arbitration it may have had through its litigation conduct. *See PPG Industries, Inc. v. Webster Auto Parts, Inc*., 128 F.3d 103, 107 (2d Cir. 1997) ("[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party.").

**A.     Motion To Stay**

It is undisputed that district courts have discretion to stay litigation while the PTO considers a related patent reissue application. *See, e.g.*, *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed Cir. 2003). Nonetheless, "a court is under no obligation to delay its own proceedings by yielding to ongoing PTO [proceedings], regardless of their relevancy." *Tyco Fire Prods. LP v. Victaulic Co.*, No. 10-CV-4645 (ECR), 2011 WL 4632689, at *2 (E.D. Pa. Oct. 4, 2011) (internal quotation marks omitted); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) (similar). In deciding whether to grant a stay, courts generally consider three factors: "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Firepass IP Holdings, Inc. v. Airbus Americas, Inc.*, No. 09-CV-4234 (ENV) (LB), 2011 WL 2650484, at *1 (E.D.N.Y. July 6, 2011) (quoting *Xerox Corp. v. 3com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)). The Court will consider each factor in turn.

The first factor strongly favors Skyline. For one thing, a stay would significantly delay the litigation. Skyline cites statistics suggesting that the reissue process takes an average of five years to complete. (Pl. Skyline Steel LLC's Opp'n Def. PilePro LLC's Mot. To Stay Pending Reissue Patent & PilePro's Mot. To Amend Its Answer (Docket No. 155) ("Pl.'s Stay Mem.") 12). PilePro contests those numbers, emphasizing that the PTO expedites reissue applications involved in stayed litigation and that the five-year average includes both expedited and non-expedited cases. (*See* Def.'s Stay Mem. 14). But even if the Court were to disregard Skyline's suggested timeline, the reissue process is likely to delay these proceedings for a substantial period of time, particularly if PilePro chooses to appeal whatever decision the PTO ultimately

makes.  Courts in this Circuit have found that the prejudice resulting from the potential for delay justifies denying a request for a stay pending parallel PTO proceedings, and there is no reason to reach a different conclusion here.  *See, e.g.*, *Capital Bridge Co., Ltd. v. IVL Technologies Ltd.*, No. 04-CV-4002 (KMK), 2006 WL 2585529, at *2 n.1 (S.D.N.Y. Aug. 30, 2006) (denying the plaintiff's motion for a stay in light of pending PTO proceedings and noting that "the uncertain length of the delay contemplated by Plaintiff's request alone" justifies refusing to grant a stay).

Additionally, given the totality of the circumstances, PilePro's motion is plainly tactically motivated to achieve either delay or a second bite at the apple.  For one thing, PilePro has tried several times already to delay this litigation.  (*See, e.g.*, Docket No. 41 (requesting a stay of discovery pending the Court's resolution of PilePro's motion to dismiss two counts of the Amended Complaint); Docket No. 186 (requesting that the Court issue a Letter of Request for International Judicial Assistance nearly eight months after PilePro first stated that it would need such assistance)).  For another, the timing and nature of PilePro's PTO application make plain that it is little more than a bald-faced attempt to circumvent this Court's unfavorable ruling on claims construction.  PilePro did not file its application until October 31, 2014 — approximately one month after the Court adopted Skyline's proposed claim construction — and it has not even attempted to argue that it could not have filed the application earlier.  *See Tyco Fire Prods.*, 2011 WL 4632689, at *4 (noting that the timing of the plaintiff's filing for reissue raised "some alarm bells" that the reissue proceedings were a "litigation gambit" when the application was filed only after the plaintiff saw the defendant's proposed claim construction).  (Decl. Tyson K. Hottinger Supp. Def. PilePro, LLC's Mot. To Stay Pending Reissue Patent (Docket No. 133) ("Hottinger Stay Decl."), Ex. A ("Reissue Application"); Docket No. 89 ("Hr'g Tr.")).  In fact, PilePro has all but admitted its intent, acknowledging in its memorandum of law in opposition to Skyline's

motion for partial summary judgment that it "sought a reissue of the '543 Patent" only "after receiving what PilePro believes to be a claim construction that was wrong as a matter of law" (PilePro, LLC's Opp'n Skyline Steel, LLC's Mot. Partial Summ. J. (Docket No. 141) ("Def.'s MSJ Mem.") 22), and making plain in its memorandum here that it intends to seek to reopen claim construction based on the PTO's adjudication of its application (Def.'s Stay Mem. 10). Allowing PilePro to engage in such strategic behavior would plainly prejudice Skyline. *Cf. Viskase Corp.*, 261 F.3d at 1328 (affirming a district court's decision declining to stay or reopen proceedings after judgment was entered against the defendant pending ongoing patent reexaminations that the defendant initiated post-trial).

Turning to the second factor, the Court finds that a stay is unlikely to simplify the issues involved in this case. While PilePro claims that it "will soon add additional independent claims and variations to the current independent claim" (Def.'s Stay Mem. 2), the reissue application now before the PTO includes only a proposed additional *dependent* claims (Reissue Application 25). As Skyline correctly points out in its memorandum of law, "dependent claims are presumed to be of narrower scope than the independent claims from which they depend." *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003). (Pl.'s Stay Mem. 2). Consequently, the reissue application is irrelevant to Skyline's contentions with regard to the independent claim. And even if the reissued patent is dramatically different in scope than the original patent, only Skyline's invalidity claim would be simplified. Some claims, such as the noninfringement claim, would become more complicated, as the Court would have to determine whether Skyline had any intervening rights. *See* 35 U.S.C. § 252 (protecting third parties who have relied on the previous scope of a patent); *Tyco Fire Prods.*, 2011 WL 4632689, at *3, *5. And other claims would be unaffected by the PTO's decision. For example, many of Skyline's claims, such as its

Lanham Act claims, depend on the truth or falsity of PilePro's statements about the scope of the '543 patent at the time they were made. Any decision that the PTO makes would not affect the analysis of those claims. Where, as here, several claims will survive no matter what the PTO does, courts have declined to issue stays. *See, e.g.*, *TouchTunes Music Corp. v. Rowe Intern. Corp.*, 676 F. Supp. 2d 169, 177 (S.D.N.Y. 2009) (finding that the issues were not likely to be simplified where "numerous issues, such as non-infringement, lack of written description, anticipation, and obviousness [would likely] remain" after the completion of the reexamination procedure). The second factor therefore also weighs in Skyline's favor.

The last factor — the stage of the litigation — does not point strongly in either direction. This case was commenced in November 2013. (Docket No. 1). Further, discovery has been ongoing since at least April 2014 (*see* Case Management Plan (Docket No. 24) ("CMP")), the Court has already held a claims construction hearing (*see* Hr'g Tr.), and Skyline has filed an early motion for partial summary judgment (Docket No. 102). That said, significant discovery remains to be done,[2] the discovery is not scheduled to close until June 19, 2015 (CMP 2), and no trial has been scheduled. *See, e.g.*, *Protegrity Corp. v. Ingrian Networks Inc.*, No. 08-CV-618 (RNC), 2011 WL 3962493 (D. Conn. Apr. 21, 2011) (finding that the stage of the case favored a stay when "th[e] case was filed three years [earlier], claims construction proceedings ha[d] been completed, and documents ha[d] been produced in discovery" but "no other discovery ha[d] been done"). Nonetheless, even if the third factor favors PilePro, because the other two factors so heavily favor Skyline, the Court finds that a stay is inappropriate, and PilePro's motion is

---

[2]   According to PilePro, "very little discovery has actually taken place." (Def.'s Stay Mem. 3). As the Court has made clear, the parties should not anticipate any further extensions of the discovery deadlines in this case. If the parties are not proceeding expeditiously to complete discovery, they do so at their own peril.

5

DENIED.  *Cf. Network Appliance, Inc. v. Sun Microsys., Inc.*, No. 07-CV-6053 (EDL), 2008 WL 2168917, at *3 (N.D. Cal. May 23, 2008) ("[T]here appears to be a growing concern among at least some judges in this district that, on balance, staying a case even in its early stages pending reexamination has not led to the just, speedy, and efficient management of the litigation, but instead has tended to prolong it without achieving sufficient benefits in simplification to justify the delay.").

**B.     Motion To Strike**

In connection with its opposition to PilePro's motion to stay, Skyline submitted a declaration from Matthias Weigel, PilePro's former attorney.  (Decl. Matthias Weigel (Docket No. 156) ("Weigel Decl.") ¶ 3-4).  That declaration responds to PilePro's contention that it conceived of the invention of the '543 patent prior to another reference, the "Hermes II Patent," cited during the original patent prosecution, but that it cannot prove its prior invention because Weigel has wrongfully withheld relevant documents.  (Def.'s Stay Mem. 5).  PilePro moves to strike Paragraphs 6-7 and 9-12 from the declaration on the grounds of attorney-client privilege. (Def. PilePro, LLC's Mem. Law Supp. Mot. To Strike Decl. Matthias Weigel (Docket No. 176) ("Def.'s Strike Mem.") 1, 4).  Specifically, it argues that the Weigel Declaration discloses confidential information in violation of his obligations under German law.  (*Id.* at 3-4).

Even accepting that German law applies and that Weigel originally had an obligation to keep some of the information in his declaration confidential, however, PilePro has waived whatever privilege it might have had.[3]  "[T]he attorney-client privilege cannot at once be used as

---

[3]     The parties have neither briefed whether German law applies to the waiver analysis nor cited German law in their waiver analyses.  (*See* Def. PilePro, LLC's Reply Mem. Supp. Mot. To Strike Various Paragraphs Decl. Matthias Weigel (Docket No. 184) ("Def.'s Reply Mem.") 4-5; Pl. Skyline Steel, LLC's Opp'n Def. PilePro LLC's Mot. To Strike Various Paragraphs Decl. Matthias Weigel (Docket No. 182) 6-9). Accordingly, the Court applies United States law.  *See,*

a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Thus, "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications," *id.*, including "when a client testifies concerning a portion of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense," *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (internal quotation marks omitted); *see also In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (stating that once a waiver is made, that waiver "applies to all other communications relating to the same subject matter" (internal quotation marks omitted)). Here, those principles compel the conclusion that PilePro waived any privilege that might have applied to the paragraphs at issue.

PilePro argues that it waived privilege only with regard to "PilePro's efforts to obtain an infringement opinion and to devise an enforcement strategy *after* issuance of the German parent of the '543 patent, not communications regarding PilePro's prosecution strategies and considerations *during* the prosecution of the German patent." (Def.'s Reply Mem. 4). As an initial matter, however, several of the paragraphs at issue discuss the prosecution of the '543 Patent, not just the German patent. (Weigel Decl. ¶¶ 9-10). And, with regard to the other challenged paragraphs, PilePro's arguments about its good faith depend on the supposed similarities between the German and '543 patents. (*See, e.g.*, Def.'s MSJ Mem. 30 (arguing that its infringement claims were "supported by the opinions of its German counsel on the very analogous German Patent"); *id.* at 29 ("[T]he '543 Patent was extremely similar to the German

---

*e.g.*, *Gold-Flex Elastic Ltd. v. Exquisite Form Indus., Inc.*, No. 95-CV-3881 (LMM), 1995 WL 764191, at *3 (S.D.N.Y. 1995) ("The parties' silence on the applicability and substance of foreign law constitutes a waiver on the issue.").

7

Patent and there are cases where a foreign counsel's opinion of an analogous foreign patent is relevant to the 'totality of the circumstances.'")).  PilePro has intentionally adopted a strategy of tying all of its patents together, going so far as to refer to them collectively as "the patent family of the '543 Patent."  (*See, e.g.*, PilePro, LLC's Resp. Skyline Steel, LLC's Statement Undisputed Material Facts (Docket No. 149) ¶¶ 30-33).  It cannot now turn around and argue that they are entirely separate.  Skyline is therefore entitled to information regarding the process of obtaining the German patent in order to assess the reasonableness of relying on German counsels' opinions about that patent in asserting infringement of the '543 Patent.[4]  Further, PilePro has claimed that Weigel has documents in his possession relevant to the invention history of the subject of the '543 Patent, which is also, it claims, the subject of the German patent.  Information about the prosecution of the German patent sheds light on what kind of documents Weigel is likely to have.  Accordingly, PilePro's motion to strike is DENIED.

**C.     Redactions**

By letter dated December 4, 2014 (Docket No. 180), PilePro requested permission to file in redacted form its consolidated reply brief in support of its motion to stay pending reissue and its motion to amend.  It justified the redactions only by observing that Skyline had designated

---

[4]     And even if it were not, much of the challenged information was publicly filed in a related lawsuit (Decl. Jenna W. Logoluso Opp'n PilePro, LLC's Mot. To Strike Various Paragraphs Decl. Matthias Weigel (Docket No. 183) ("Logoluso Decl."), Ex. 1 ¶¶ 10, 13), *see Madanes v. Madanes*, 186 F.R.D. 279, 293 (S.D.N.Y.1999) (stating that a party waived the attorney-client privilege by "failing to take reasonable steps to maintain the confidentiality" of documents publicly filed in a separate lawsuit), or put in issue during the deposition of Roberto Wendt (*see, e.g.*, Logoluso Decl., Ex. 2 at 147:9-148:16 (discussing Weigel's assessment of the validity of the German patent (and the possibility of obtaining similar patents in other countries) in the face of a lawsuit initiated by ArcelorMittal); 149:6-7 (stating that Weigel handled all of PilePro's patents); 317:6-319:3 (discussing an e-mail from Weigel about the fact that German patent office had issued a notice of allowance of the patent claim and the potential international ramifications); 322:24-323:5-8 (discussing an e-mail from Weigel about ArcelorMittal's opposition to the German patent)).

8

certain deposition testimony as "Highly Confidential-Attorneys' Eyes Only." The mere fact that information is subject to a confidentiality agreement between litigants, however, is not a valid basis to overcome the presumption in favor of public access to judicial documents. *See, e.g.*, *Dandong v. Pinnacle Performance Ltd.*, 10-CV-8086 (JMF), 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) ("The consent of the parties is not a valid basis to justify sealing, as the rights involved are the rights of the public." (internal quotation marks omitted)); *Vasquez v. City of New York*, No. 10-CV-6277 (LBS), 2012 WL 4377774, at *3 (S.D.N.Y. Sept. 24, 2012) (similar). Accordingly, the parties are granted leave to file letter briefs, no later than **February 17, 2015**, and not to exceed five pages, addressing the propriety of the redactions in light of the presumption in favor of public access. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of public access). If no party files a brief justifying the redactions, PilePro shall file an unredacted version of its reply by no later than **February 19, 2015**.

## CONCLUSION

For the foregoing reasons, PilePro's motions to stay and to strike are DENIED. The Clerk of Court is directed to terminate Docket Nos. 131 and 175.

SO ORDERED.

Date: February 9, 2015
New York, New York

JESSE M. FURMAN
United States District Judge