UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:

SKYLINE STEEL, LLC,                                   :
:
                              Plaintiff,              :
:
              -v-                                     :
:
PILEPRO, LLC,                                         :
:
                              Defendant.              :
:
-------------------------------------------------------------------X

```
┌────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____          │
│ DATE FILED: _04/24/2015___      │
└────────────────────────────────┘
```

13-CV-8171 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

This bitter patent suit involves two manufacturers of sheet pile wall systems, which are often used to construct temporary walls to retain soil or water.  Plaintiff Skyline Steel, LLC ("Skyline") sues Defendant PilePro, LLC ("PilePro"), seeking a declaration that it has not infringed one of PilePro's patents and that the patent is invalid, as well as damages under the Lanham Act, 15 U.S.C. § 1051, *et seq*, and state law in connection with accusations PilePro made — in letters to potential customers and on a website — that Skyline was infringing its patent.  Since October 23, 2014, the parties collectively have filed at least seven major substantive motions (and various other less substantial applications).  This Opinion and Order addresses the final two: (1) Skyline's motion for partial summary judgment and (2) Skyline's motion for spoliation sanctions.  In addition, both parties seek permission to file certain materials relating to the two motions under seal or in redacted form.

For the reasons explained below, Skyline's motion for partial summary judgment is GRANTED with respect to its noninfringement claim and DENIED as to its other claims, and its motion for spoliation sanctions is GRANTED.  Further, although PilePro has not requested it,

PilePro is GRANTED summary judgment on the question of bad faith with respect to most of Skyline's claims.

## BACKGROUND

The following facts, drawn from the admissible materials submitted by the parties and materials of which the Court may take judicial notice, are undisputed except where noted.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  This case concerns sheet pile wall systems.  Sheet piles are "long structural wall sections with a vertical interlocking system that creates a continuous wall" that can be used to retain soil or water.  (Pl. Skyline Steel, LLC's Statement Undisputed Material Facts Pursuant Local R. 56.1 (Docket No. 104) ("Pl.'s SUF") ¶¶ 3-4; Def.'s Responsive Claim Construction Br. (Docket No. 59) ("PilePro's Claim Constr. Br.") 1, 5).  The wall sections "are held together by longitudinal grooves called 'interlocks.'" (Pl.'s SUF ¶¶ 3-4).  How well the interlocks function is critical; if the connections between sheet piles are too loose, for example, there may be "seepage" or forces may not be distributed evenly throughout the wall.  (PilePro's Claim Constr. Br. 2-3).

Both Skyline and PilePro sell sheet pile components, including connectors.  (Pl.'s SUF ¶¶ 8-10).  PilePro owns United States Patent No. 8,556,543 (the "'543 Patent"), which was issued on October 15, 2013.  (Pl.'s SUF ¶¶ 11-12).  That patent, which contains only method claims, covers a particular way of making sheet pile wall components with at least one interlock.  (Pl.'s SUF ¶¶ 14-15).  To the extent relevant here, the method consists of two steps: (1) "producing a preliminary product through forming, wherein a material accumulation is formed during the forming of the preliminary product at a section that is to be provided with the at least one interlock while the remaining section is free of material accumulation," and (2) "shape-cutting the at least one interlock at a section of the preliminary product that is to be provided with the at

least one interlock." (Decl. Jenna Logoluso Supp. Skyline Steel, LLC's Mot. Partial Summary

Judgment (Docket No. 105) ("Logoluso MSJ Decl."), Ex. 4 ("'543 Patent"), at 5-6).

Notably, to obtain the '543 Patent, PilePro had to distinguish an earlier patent, the

"Hermes I Patent."  That patent similarly covers a sheet pile wall component with material

accumulation, but it describes an invention with material accumulation all along the flange, not

just at "a section . . . that is to be provided with the . . . interlock."  ('543 Patent 5-6).  As

discussed in more detail below, PilePro went back and forth with the United States Patent and

Trademark Office ("PTO") several times in order to differentiate its proposed patent from

Hermes I.  As a result of that back and forth, PilePro added the phrase "while the remaining

section is free of material accumulation" to its proposed claim description.  (Logoluso MSJ

Decl., Ex. 28, at 2).  PilePro explained that its patent thus differentiated "between the *interlock* at

the longitudinal edge and *the remaining section*."  (*Id.* at 8 (emphases added)).

Skyline is the distributor of a sheet piling system, called the "HZM System," which is

manufactured by ArcelorMittal Commercial RPS ("ArcelorMittal").  (Pl.'s SUF ¶ 8).

ArcelorMittal is also the owner of the Hermes I Patent.  (Pl.'s SUF ¶ 117).  Just eight days after

the '543 Patent issued, Skyline received a letter from PilePro stating that the '543 Patent "may

cover" the HZM System.  (Pl.'s SUF ¶ 50).  PilePro sent similar letters to several of Skyline's

potential customers — including one contractor that had already entered into a contract with

Skyline to purchase the HZM System — warning them that PilePro would seek to hold them

liable for any damages to which it may be entitled.  (Pl.'s SUF ¶¶ 51-54, 56-57, 60-61).  Further,

from approximately mid-November 2013, through January 24, 2014, PilePro posted a warning

on a public website that it operates, www.isheetpile.com (the "Website"), stating that the HZM

System "infringes a U.S. Patent owned by PilePro, LLC."  (Pl.'s SUF ¶¶ 76-78, 81).

Skyline filed this action on November 15, 2013, seeking a declaration that the HZM System does not infringe the '543 Patent and that the '543 patent is invalid.  (Docket No. 1).  On December 20, 2013, it amended the Complaint to add Lanham Act and state law claims.  (Docket No. 3).  In July 2014, PilePro filed a motion to dismiss based on an unconditional covenant not to sue it had granted Skyline, which it argued deprived the Court of jurisdiction.  (Docket No. 38; *see* Pilepro's Mem. Law Supp. Mot. To Dismiss Counts One & Two Skyline's First Am. Compl. (Docket No. 39) 1).  In response, Skyline filed a Second Amended Complaint (Docket No. 58) (the "Complaint"), and PilePro filed a second motion to dismiss (Docket No. 62).  On September 23, 2014, after a claims construction hearing, the Court adopted Skyline's proposed definition of "material accumulation" as "material giving the sheet pile component a thickness greater than at its least thickness" (Docket No. 89 ("Hearing Tr."), at 59-60; Opening Claim Constr. Br. Pl., Skyline Steel, LLC (Docket No. 54) ("Skyline's Claim Construction Br.") 13), and PilePro's definition of "free of material accumulation" as the phrase's "plain and ordinary meaning" (Hearing Tr. 65-66; Def.'s Responsive Claim Construction Br. (Docket No. 59) ("PilePro's Claim Construction Br.") 24).  The Court also denied PilePro's motion to dismiss, and granted Skyline permission to file an early summary judgment motion.  (Docket Nos. 83-84, 89).

Skyline filed its motion for partial summary judgment on October 23, 2014 (Docket No. 102), and its motion for spoliation sanctions on November 8, 2014 (Docket No. 169).  The latter did not become fully submitted until March 26, 2015 (Docket No. 267); and on April 10, 2015, at the Court's direction, the parties filed supplemental memoranda of law with respect to both motions.  (Docket Nos. 277, 280).

## DISCUSSION

As noted, Skyline brings two motions.  First, it seeks summary judgment with respect to its declaratory judgment claim of noninfringement and on the issue of bad faith, which is relevant to various claims.  Second, it seeks spoliation sanctions for PilePro's alleged failure to preserve certain electronically stored information.  The Court will begin with Skyline's motion for partial summary judgment, before turning to the motion for spoliation sanctions.

### A.      Skyline's Motion for Partial Summary Judgment

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the

allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of or in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

### 1.    Noninfringement

As noted, Skyline moves first for summary judgment on its declaratory judgment claim of noninfringement.[1]  To determine whether a patent has been infringed, a court "first construes the claims and then determines whether every claim limitation, or its equivalent, is found in the accused device."  *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed Cir. 2008). Further, "all the limitations of a claim must be considered meaningful," *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1286 (Fed. Cir. 2010), and the patentee has the burden of proof, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 846 (2014). Summary judgment with respect to a claim of noninfringement "is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial."  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001); *see also, e.g.*, *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of

---

[1]    Skyline argues in its memorandum of law that PilePro has waived any right to bring an infringement claim against Skyline.  (Pl. Skyline Steel, LLC's Mem. Law Supp. Mot. Partial Summary Judgment (Docket No. 103) ("Pl.'s Mem.") 7-8).  That argument is both unripe (because PilePro has not attempted to bring any such claim) and moot (because of the Court's conclusion on Skyline's noninfringement claim), so the Court need not reach it here.

noninfringement may meet its initial responsibility . . . by showing that the evidence on file fails

to establish a material issue of fact essential to the patentee's case." (citing *Vivid Tech., Inc. v.*

*Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999)).

Here, Skyline seeks a declaration of noninfringement with respect to three components of

the HZM System: King Piles, intermediary AZ Piles, and connectors.  (Pl.'s Mem. 8-12).

PilePro, however, claims that it has never asserted that either the intermediary AZ Piles or

connectors infringe the '543 Patent.  (Def. PilePro LLC's Supplemental Mem. Law Opp'n Pl.

Skyline Steel, LLC's Mot. Partial Summ. J & Spoliation Sanctions (Docket No. 280) ("Def.'s

Supplemental Mem.") 1).  Moreover, in its opposition to Skyline's motion for partial summary

judgment, PilePro identifies only certain King Pile components sold by Skyline and concedes

that "[c]ertain King Pile beams that can be part of the HZM System were not 'accused.'"

(PilePro, LLC's Opp'n Skyline Steel, LLC's Mot. Partial Summ. J. (Docket No. 141) ("Def.'s

Mem.") 3 n.1).  Like Skyline, the Court interprets that statement as an admission that unlisted

King Pile beams do not infringe the '543 patent.  (Pl. Skyline Steel, LLC's Reply Mem. Supp.

Mot. Partial Summ. J. (Docket No. 163) ("Pl.'s Reply Mem.") 4-5 & n.6).[2]  Accordingly,

Skyline's motion for summary judgment is granted as uncontested with respect to the

intermediary AZ Piles, the connectors, and the unlisted King Pile beams.

That leaves only the listed King Piles.  Skyline argues that the King Piles do not infringe

the '543 Patent because (1) the patent does not apply to sheet pile components with material

accumulation that extends beyond the section to be provided with the interlock, and (2) "[a]ll of

the HZM System king piles contain material accumulation according to [the Court's] definition

---

[2]     Although Skyline noted its interpretation in its reply memorandum of law, PilePro neither
asked to file a sur-reply nor submitted a letter to the Court contradicting Skyline's interpretation.

that extends along the flange outside the area of the interlock."  (Pl.'s Mem. 10-11; Decl. David

Borger Supp. Pl. Skyline Steel, LLC's Mot. Partial Summ. J. (Docket No. 115) ("Borger Decl."),

Ex. J (measuring the dimensions of each King Pile on publicly available CAD drawings)).  For

its part, PilePro does not object to Skyline's characterization of the King Piles, but it argues that

the "section to be provided" with an interlock can extend far beyond the portion of the King Pile

directly adjacent to the interlock, "so long as the defined section encompasses the longitudinal

edge and includes all of the material accumulation and/or the interlock."  (Def.'s Mem. 15-16).

Thus, under PilePro's interpretation of the patent, a component infringes its patent as long as

PilePro can identify a point anywhere along the component, one side of which would contain all

of the material accumulation, the longitudinal edge, and the interlock, and the other side of which

would be "free of material accumulation."[3]

PilePro's interpretation, however, is flatly contradicted by the text and images contained

in the patent itself, the patent prosecution history, and the arguments that PilePro previously

made before this Court.  Beginning with the '543 Patent, PilePro points to several images

(Figures 3a through 3d) that it says support its definition.  (Def.'s Mem. 16).  But those images

show material accumulation only immediately adjacent to the interlock.  ('543 Patent, Figs. 3a-

3d).  Further, the patent specification — which is not only "highly relevant to the claim

construction analysis," but also "[u]sually . . . dispositive," *Phillps v. AWH Corp.*, 415 F.3d

1303, 1315 (Fed Cir. 2005) (internal quotation marks omitted) — clearly distinguishes between

the "*place* of a finished interlock," where "the material accumulation is formed," on the one

hand, and the "remaining section," which is free of the material accumulation, on the other.

---

[3]     The Court notes that neither party ever asked for a construction of the term "section to be
provided with the at least one interlock."

('543 Patent 3-4 (emphasis added)).  PilePro's interpretation of the patent, if accepted, would eviscerate that distinction.  The plain terms of the patent, therefore, undermine PilePro's argument.  *See, e.g.*, *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed Cir. 2012) (noting that "[t]he words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history"); *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1263 (Fed. Cir. 2007) (stating that "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude" and finding that "the plain language of the claim" supported the district court's construction (internal quotation marks and citations omitted)).

PilePro's interpretation of the patent is also inconsistent with the prosecution history. *See, e.g.*, *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (noting that the "well established" doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution").  Specifically, in an effort to distinguish its invention from the Hermes I patent, PilePro expressly disclaimed the interpretation of the '543 Patent that it advances now.  For example, on October 4, 2012, PilePro submitted an amendment to its patent application to clarify that material accumulation would occur "only" at the section to be provided with the interlock.  (Logoluso MSJ Decl., Ex. 30, at 2). It explained that the amendment clarified that the '543 Patent, unlike Hermes I, requires "the material accumulation at the section that is to be provided with [an] interlock to be different from the material accumulation on the remainder of the pile wall component."  (*Id.* at 6).  The PTO responded, however, that the entire flange of the sheet pile component in Hermes I could be seen as one "section," which would mean that material accumulation was present only at the section

9

to be provided with the interlock in both the Hermes I application and the proposed '543 Patent. (Decl. Douglass A. Mitchell Supp. PilePro, LLC's Responsive Claim Constr. Br. (Docket No. 60) ("Mitchell Decl."), Ex. F, at 7).  Thus, the PTO concluded, "[s]ince the material accumulation is formed only on the flange and since the interlock is located on the flange, the apparatus as taught by Hermes reads on the claims limitation." (*Id.*).  In response, PilePro added the language, "while the remaining section is free of material accumulation" to its proposed claim description.  (Logoluso MSJ Decl., Ex. 28, at 2).  In so doing, PilePro explained that, contrary to "[t]he interpretation of Hermes et al. by the Examiner . . . that the entire sheet pile 10 is the section to be provided with the interlock," the patent as amended "differentiate[s] between the *interlock* at the longitudinal edge and *the remaining section*." (*Id.*, Ex. 28, at 8 (emphasis added)).  That statement clearly disclaimed any interpretation of the '543 Patent that would allow the phrase "section to be provided with the at least one interlock" to mean anything other than the place where the interlock was to be formed, as distinguished from the "remaining section" — the rest of the component.

Finally, PilePro's interpretation of the patent renders its proposed construction of "material accumulation" at the claims construction hearing nonsensical.  Both at the hearing and in its claim construction brief, PilePro vigorously argued that material accumulation includes only "material formed at a section of a preliminary product . . . which material is subsequently and *substantially removed* as part of the providing the at least one interlock." (*See, e.g.*, PilePro's Claim Constr. Br. 8 (emphasis added); Hearing Tr. 48 ("[W]e see the material accumulation is *removed* through the performance of the method steps." (emphasis added))).  But now, PilePro is arguing that how much material accumulation remains after the interlock's formation is irrelevant; the '543 Patent, it asserts, covers an invention as long as *any* portion of

the material accumulation is removed.  Further, PilePro repeatedly emphasized at the claims

construction phase of the litigation that material accumulation could occur only at a particular

area of the preliminary product — the area that would become the interlock.  (*See, e.g.*, Hearing

Tr. 48 ("We see the material accumulation occurs at a *specific location* . . . ." (emphasis added));

PilePro's Claim Constr. Br. 16 ("Thus, the Applicant distinguished between the claimed

invention, which contained 'material accumulation' *at the point* that is to be provided with the

interlock, and the Hermes I reference." (emphasis added)); *id.* at 17 ("Thus, PilePro's

construction necessarily limits material accumulation in the '543 patent to a specific location of

the preliminary product.")).  Now, it argues exactly the opposite.  It is clear that, at the claims

construction hearing, PilePro understood the phrase "section that is to be provided with the at

least one interlock" to mean the portion of the preliminary product that was to *become* the

interlock, not an arbitrary segment of the sheet pile component that happens to contain all of the

material accumulation and the longitudinal edge.  It cannot now, having lost at the claims

construction phase, turn around and argue otherwise.

     For the foregoing reasons, the undisputed evidence shows that the King Piles at issue do

not infringe the '543 Patent.  Accordingly, Skyline's motion for summary judgment on its

noninfringement claim is GRANTED in its entirety.

     **2.**    ***Bad Faith***

     Skyline also seeks summary judgment on the issue of whether PilePro acted in bad faith.

Skyline must prove bad faith in order to prevail on most, if not all, of its claims under state law

and the Lanham Act.  *See, e.g.*, *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed.

Cir. 2008) ("To prevail on an unfair-competition claim under section 43(a) of the Lanham Act

stemming from a patentee's marketplace activity in support of his patent, the claimant must first

establish that the activity was undertaken in bad faith."); *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) ("Federal patent law likewise preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent.").  Under controlling Federal Circuit precedent, to demonstrate bad faith, a plaintiff must prove two elements.  *See Sanofi-Synthelabo v. Apotex, Inc.*, No. 02-CV-2255 (RWS), 2002 WL 1917871, at *3 n.2 (S.D.N.Y. Aug. 20, 2002) ("Federal Circuit law controls substantive and procedural issues that pertain to patent law.").  First, the plaintiff must show that the claims asserted were "objectively baseless" — that is, that "no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent."  *Judkins*, 529 F.3d at 1338 (internal quotation marks omitted); *accord Dominant Semiconductors*, 524 F.3d at 1260. Second, the plaintiff must also prove subjective bad faith, meaning that the "lack of objective foundation for the claim was *either* known *or* so obvious that it should have been known." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013) (internal quotation marks omitted).  The objective element "is a threshold requirement."  *Judkins*, 529 F.3d at 1338. That is, "[a]bsent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent."  *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).[4]

---

[4]     The Supreme Court's recent decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which rejected the Federal Circuit's two-part test for whether a case qualifies as "exceptional" for purposes of Title 35, United States Code, Section 285, casts some doubt on the continuing validity of the two-part test for good faith in this context.  But neither the Supreme Court nor the Federal Circuit has explicitly disavowed the test to the extent it is relevant in this case.  *Cf. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 776 F.3d 837, 847-48 (Fed Cir. 2015) (Hughes, J., concurring) (calling for en banc review of the viability of the two-part good faith standard in determining whether infringement was willful in light of *Octane Fitness*); *Halo Electronics, Inc. v. Pule Electronics, Inc.*, 769 F.3d 1371, 1383-85 (Fed. Cir. 2014) (O'Malley, J., concurring) (similar).  And the parties have both invoked the two-part test, with only limited reference (in a footnote in Skyline's supplemental memorandum and a

The Federal Circuit does not appear to have addressed whether objective baselessness is a question of law or fact in this context.  The Court of Appeals, however, has addressed the issue for purposes of deciding whether infringement was willful.  *See Powell v. Home Depot USA, Inc.*, 663 F.3d 1221, 1236-37 (Fed. Cir. 2011).  In *Powell*, the Court held that, "[u]nder the objective prong, the answer to whether an accused infringer's reliance on a particular issue or defense is reasonable is a question for the court when the resolution of that particular issue or defense is a matter of law."  *Id.* at 1236.  By contrast, "[w]hen the resolution of a particular issue or defense is a factual matter . . . whether reliance on that issue or defense was reasonable under the objective prong is properly considered by the jury."  *Id.* at 1236-37.  PilePro argues that *Powell* is inapposite — and that the issue is always one of fact — because the infringer has the burden of proof to demonstrate that infringement was not willful whereas Skyline has the burden of proof here to show that PilePro acted with bad faith.  (Def.'s Supplemental Mem. 4-5 (citing *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1375 (Fed. Cir. 2002))).  But while differences in the burden of proof may affect analysis of whether bad faith has been proved, there is no reason why it should affect whether the issue is a question of law or fact.  Additionally, although PilePro cites cases contemplating submission of the question of objective baselessness to the jury (*see* Def.'s Supplemental Mem. 3-4), that does not mean that *Powell* does not apply in this context; under *Powell*, objective baselessness *is* a jury question if the inquiry turns on an issue of fact.  Accordingly, the Court concludes that the *Powell* standard should apply here.

---

footnote in PilePro's memorandum of law referencing the wrong case, no less) to the possibility that it is no longer valid in light of *Octane Fitness.*  (Def.'s Mem. 24 n.10; Pl.'s Supplemental Br. Pursuant Court Order (Docket No. 277) ("Pl.'s Supplemental Mem.") 3 n.4).  The Court will therefore apply the two-part test here.  *See, e.g.*, *GPNE Corp. v. Fleetmatics USA, LLC*, No. 13-CV-2049 (SLR) (SRF), 2015 WL 730046, at *3 & n.2 (D. Del. Feb. 20, 2015) (applying the two-part test to determine whether patentee acted in bad faith).

Applying that standard, the Court concludes first that there is a genuine dispute of material fact with respect to whether PilePro acted in bad faith in sending a letter to one of its customers, the John Madonna Construction Company ("Madonna").  In that letter, which was dated November 1, 2013, PilePro stated that it had "heard that infringing components may currently be in the course of delivery to [Madonna's] project site."  (Pl.'s SUF ¶¶ 61-62).  Citing the date on which the components at issue were shipped from Luxembourg (September 10, 2013), and the time it usually takes from manufacture of the components to delivery, Skyline argues that that no reasonable litigant could have believed that statement because the '543 Patent did not issue until October 15, 2013.  (Pl.'s Mem. 13-14 (citing cases for the proposition that a product made before the issuance of a method patent cannot infringe, regardless of when it is sold, offered for sale, or imported); *see id.* at 19; Pl.'s SUF ¶¶ 63, 65-66).  But there is no evidence in the record that PilePro actually knew when the components were manufactured and shipped.  (*See* Def.'s Mem. 27; *see also* Decl. Janet B. Linn Supp. Def. PilePro LLC's Supplemental Mem. Law (Docket No. 281) ("Linn Decl."), Ex. A at 196 (stating that PilePro did not know when the components were being sent from Europe to the construction site), Ex. B. at 172 (similar)).  And while it may typically take twelve to sixteen weeks from manufacture to delivery, there is evidence that that "time can be reduced if there are products on the ground and some of the (non-covered) manufacturing steps have already occurred."  (Def.'s Counterstatement Material Facts (Docket No. 149) ("Def.'s Counterstatement") ¶¶ 38-39; *see* Def.'s Mem. 9, 27).  Given the factual uncertainty, the Court cannot say as a matter of law that a

reasonable party in PilePro's position would have known that the allegations made in the letter to Madonna were objectively baseless.[5]

By contrast, there are no disputes of fact relevant to the objective element of bad faith with respect to the remainder of PilePro's accusations of infringement.  Skyline argues that all of PilePro's infringement claims were objectively baseless because PilePro had disclaimed any sheet pile component with material accumulation "at any location other than the longitudinal edge where the interlock would be located" during the prosecution of the '543 Patent.  (Pl.'s Mem. 17-18).  Citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916-18 (Fed. Cir. 2012), and *Home Gambling Network Inc., v. Piche*, 05-CV-610 (DAE), 2014 WL 2170600, at *4-9 (D. Nev. May 22, 2014), Skyline contends that PilePro's "disregard" of its prosecution disclaimer supports a finding of bad faith.  (Pl.'s Mem. 18).  In response, PilePro contends that its accusations were not objectively baseless because they were based on a construction of the term "material accumulation" that, although ultimately rejected by the Court, could have resulted in a finding of infringement.  (Def.'s Mem. 26).  The Court agrees with PilePro.  Although the Court ultimately adopted Skyline's proposed claim construction (and granted it a declaration of noninfringement on that basis), it concludes that PilePro's claim construction was not so meritless as to warrant a finding that no reasonable party could realistically expect PilePro to prevail in an infringement lawsuit.

*MarcTec* and *Home Gambling Network*, the cases cited by Skyline (*see* Pl.'s Mem. 18), do not call for a different result.  In *MarcTec*, the Federal Circuit affirmed the district court's

---

[5]     Given that conclusion — namely, that the objective element of bad faith is a question for the jury with respect to the Madonna letter — the Court need not, and does not, reach the subjective element, except to say that the evidence would support (though not compel) a finding of subjective bad faith on PilePro's part.

finding that a case was "exceptional" for purposes of Title 35, United States Code, Section 285, which, at the time the case was decided, required a finding of objective baselessness.[6]  In doing so, the Federal Circuit found that the plaintiff's infringement suit was objectively baseless in part because "the specification and prosecution history clearly refute[d] [the plaintiff's] proposed claim construction" and because the "proposed claim construction was so lacking in evidentiary support that assertion of this construction was unreasonable."  *Id.* at 919.  Similarly, in *Home Gambling Network*, the Court found that the plaintiffs should have known that its claims could not succeed because, before the PTO, the plaintiff had "purposefully" limited his claims to exclude the types of products offered by the defendants.  2014 WL 2170600, at *7-9.  (As it happens, the plaintiffs' main argument for why the Court should not find that the case was exceptional appears to have been that the defendants had not pleaded prosecution disclaimer as an affirmative defense, and thus the plaintiffs could not have known that the Court would grant summary judgment on that basis — not that the plaintiffs believed that they had had a strong argument that prosecution disclaimer did not apply.  *See id.* at *7-8.)

Here, by contrast, although the Court did ultimately reject PilePro's proposed construction, that construction was not "clearly refute[d] by the prosecution history."  *MarcTec, LLC*, 664 F.3d at 919; *see also id.* at 918 ("[I]t is clear that defeat of a litigation position . . . does not warrant an automatic finding that the suit was objectively baseless . . . " (internal quotation marks omitted)).  As PilePro noted in its claim construction brief and as explained above, the PTO initially rejected PilePro's patent application in part because it did not limit material

---

[6]     As noted above, the Supreme Court struck down the Federal Circuit's test for whether a case qualifies as "exceptional" for purposes of Section 285 in *Octane Fitness*.  *See* 134 S. Ct. at 1756-57.  In that regard, *MarcTec* is no longer good law.  But its analysis of whether the plaintiff's patent suit was objectively baseless is nevertheless instructive.

accumulation to a particular section of the sheet pile component.  (PilePro's Claim Constr. Br. 15).  PilePro's proposed construction of "material accumulation" as "material formed at a section of a preliminary product to be provided with the at least one interlock, which material is subsequently and substantially removed as part of provided the at least one interlock" (*id.* at 8 (emphasis omitted)) was therefore arguably consistent with PilePro's statements during the patent prosecution that the language was added to specify that material accumulation, as described by the '543 Patent, was limited to a particular point of the sheet pile component, namely the place where the interlock was to be formed.  (*See id.* at 15-16).  Nor was PilePro's argument that the term "material accumulation" must exist only on the preliminary product, rather than the final product, so clearly contrary to the patent prosecution history as to be frivolous, particularly given that much of the patent itself discusses the removal of material to create the interlock.  The difference is one of degree, but it is enough for the Court to find that PilePro's claim construction — and, by extension, its accusations of infringement — were not objectively baseless.

Skyline argues that, even if the Court accepts PilePro's argument that its proposed claim construction was reasonable, PilePro's claims of infringement were still objectively baseless because, even under PilePro's proposed interpretation of the patent, "the material accumulation of Skyline's King Piles extends well beyond the section that is to be provided with the interlock." (Pl.'s Supplemental Mem. 4).  But the whole point of PilePro's proposed construction was that the remaining material would not be included within the definition of "material accumulation" because it was not removed.  (PilePro's Claim Constr. Br. 8 (defining "material accumulation" in part as "material [that] is subsequently and substantially removed as part of providing the at least one interlock"); *see also id.* at 11-15).  It is well established that "a

patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though he may misconceive what those rights are.'" *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (quoting *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950)).  Given the undisputed evidence in the record, Skyline cannot prove that PilePro was doing otherwise here.

 In light of the foregoing, the Court concludes not only that Skyline is not entitled to summary judgment on the issue of bad faith, but also that PilePro — even though it has not cross-moved for summary judgment — is entitled to summary judgment on the issue with respect to all of Skyline's claims except for those arising out of the letter sent to Madonna.  It is well established that, in considering a motion for summary judgment, a court may grant summary judgment in favor of a non-moving party and without notice to the moving party if, first, "there are no genuine issues of material fact" and "the law is on the side of the nonmoving party," and, second, the moving party had "an adequate opportunity to come forward with all of its evidence."  *Orix Credit Alliance, Inc. v. Horten,* 965 F. Supp. 481, 484 (S.D.N.Y. 1997) (citing *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir. 1991); *see also Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97-CV-6308 (DC), 1999 WL 294806, at *2 n.2 (S.D.N.Y. May 11, 1999).  That is the case here.  Skyline has had an adequate opportunity to come forward with all of its evidence, *see Orix Credit Alliance*, 965 F. Supp. at 484, and the undisputed record makes clear that PilePro's accusations of infringement (except perhaps those made in the letter to Madonna) were, as a matter of law, not objectively baseless.  (*See also* Pl.'s Supplemental Mem. 2 (arguing that "claim construction is a pure question of law . . . and thus, whether PilePro's proposed claim construction was reasonable is for the Court to decide")).  It

follows that Skyline cannot prove bad faith as a matter of law, and it is "unnecessary" to reach the question of PilePro's subjective intent. *800 Adept, Inc.*, 539 F.3d at 1370.[7]

**B.      Skyline's Motion for Spoliation Sanctions**

Next, Skyline moves for spoliation sanctions arising out of PilePro's failure to preserve two kinds of data about who viewed PilePro's infringement warning on the Website: (1) Google Analytics data, which Skyline describes as a set of tools that, "among other things, allows businesses to track visitors to their website and to see which pages were viewed"; and (2) server log files created using a tool called PaperTrail (the "PaperTrail" logs).  (Mem. Law Supp. Pl. Skyline Steel, LLC's Mot. Spoliation Sanctions (Docket No. 170) ("Pl.'s Spoliation Mem.") 3 n.2; *id.* at 4).  Both Google Analytics and the PaperTrail logs allowed PilePro to track visitors to the Website.  (Decl. Jenna Logoluso Supp. Skyline Steel, LLC's Mot. Spoliation Sanctions (Docket No. 171) ("Logoluso Spoliation Decl."), Ex. 4 at 60-62, 71-72).  Both kinds of data, however, are not available for the relevant time period.  While PilePro had previously used Google Analytics to track visitors to the Website, third-party program developers for the Website "inadvertently" removed the Google Analytics programming code around November 8, 2013 — approximately five days before the first infringement warning appeared.  (Def. PilePro LLC's Mem. Law Opp'n Pl. Skyline Steel, LLC's Mot. Spoliation Sanctions (Docket No. 187) ("Def.'s Spoliation Mem."), Ex. 1 ("Mitchell Spoliation Decl.") ¶ 9, Ex. 2 ("Montrose Dep."), at 117-119, 142).  Accordingly, no Google Analytics data was created for the time period during which the

---

[7]      Both Skyline and PilePro lodge evidentiary objections.  (Docket Nos. 105, 143, 144; *see* Docket Nos. 145, 166, 167).  The Court did not rely on the material to which Skyline objects. Accordingly, Skyline's objections are overruled as moot, without prejudice to renewal through a proper motion *in limine* or at trial.  On the other hand, the Court has reviewed PilePro's objections, and finds them to be without merit substantially for the reasons explained in Skyline's memorandum of law.  (Docket No. 166).  Accordingly, PilePro's objections are also overruled.

infringement warning appeared on the Website.  The PaperTrail logs were also unavailable because all page view logs are automatically deleted after seven days, and the automatic deletion process was never suspended.  (Mitchell Spoliation Decl. ¶ 12).

It is undisputed that a "litigant has the 'duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.'"  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010) (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).  The obligation to preserve evidence — including electronically stored information — "arises when the party has notice that the evidence is relevant to litigation . . . for example when a party should have known that the evidence may be relevant to future litigation."  *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 313-14 (S.D.N.Y. 2013) (internal quotation marks omitted).  *See generally Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003) (discussing the obligation to preserve electronically stored information).  If triggered, the preservation obligation requires a litigant to do more than refrain from intentionally destroying relevant evidence; the litigant must also "take affirmative steps to prevent inadvertent spoliation."  *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010).  That means, among other things, that the litigant "must identify all sources of potentially relevant evidence and implement a 'litigation hold' suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence."  *Id.*

If a party violates its duty to preserve evidence, the other party may seek spoliation sanctions.  "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"

*Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 435 (S.D.N.Y. 2010) (quoting

*Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 107 (2d Cir. 2001)).  Where a party

seeks sanctions based on the spoliation of evidence, it must establish "that the sought-after

evidence actually existed and was destroyed."  *Farella v. City of N.Y.*, No. 05-CV-5711 (NRB),

2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) (emphasis omitted); *accord Binson v. Max

Kahan, Inc.*, No. 12-CV-4871 (ER), 2014 WL 5089751, at *7 (S.D.N.Y. Sept. 30, 2014).  In

addition, it must show that (1) the party having control over the evidence had an obligation to

preserve it at the time it was destroyed; (2) the evidence was destroyed "with a culpable state of

mind"; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a

reasonable trier of fact could find that it would support that claim or defense.  *Residential

Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002).

        In this case, Skyline's arguments with respect to the Google Analytics data founder at the

first step of the analysis.  Put simply, PilePro had no duty to "preserve" the Google Analytics

data at issue because such data never existed.  PilePro's third-party vendor deactivated Google

Analytics on November 8, 2013, at least five days before the HZM warning first appeared on the

Website (and approximately two weeks before PilePro was even put on notice of Skyline's

potential claims in this litigation), and PilePro did not discover the deactivation until April 2014,

several months after the HZM warning had been taken down.  (*See* Logoluso Spoliation Decl.,

Ex. 14).  Thus, for the entirety of the relevant period, no Google Analytics data exists.  Skyline

tries to overcome that obstacle by suggesting that PilePro had an obligation to continue

collecting the data (Reply Mem. Law Supp. Pl. Skyline Steel, LLC's Mot. Spoliation Sanctions

(Docket No. 267) ("Pl.'s Spoliation Reply") 4-5), but it cites no authority for that proposition.

*Cf. Farella*, 2007 WL 193867, at *3 (finding no spoliation of evidence where the requested

records never existed).  And while Skyline implies that PilePro turned off Google Analytics

intentionally to ensure that no data was recorded for the time that the infringement warning

appeared (*see, e.g.*, Pl.'s Spoliation Reply 2 n.3), Skyline provides no evidence to contradict

PilePro's claim that Google Analytics was inadvertently turned off by its third-party vendor,

LB&M Software.  (Montrose Dep. 116-17).  In fact, Skyline concedes that PilePro did not

"discover[]" the deactivation of Google Analytics until at least April 2014.  (Pl.'s Spoliation

Mem. 18).  In short, Skyline fails to demonstrate that PilePro had a duty to "preserve" the

Google Analytics data at issue.

> PilePro's duty with regard to the PaperTrail logs, however, is a different matter.  PilePro

argues that it had no obligation to preserve those logs because they "are retained for exactly one

week and PilePro did nothing intentionally to overwrite them."  (Def.'s Spoliation Mem. 14).  It

acknowledges that it had an obligation to "suspend the overwriting of temporary files," but

argues that the obligation arose only after Skyline specifically requested the files, by which time

all of the files from the relevant time period had been overwritten.  (*Id.*).  In so arguing, PilePro

relies heavily on two cases: *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409

(S.D.N.Y. 2009), and *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F.

Supp. 2d 627 (E.D. Pa. 2007).  Neither case, however, is particularly helpful to PilePro.  *Arista

Records*, which concerned whether the defendants had a duty to preserve certain usage logs,

stated only that the defendants "[a]rguably" did not have a duty to preserve the logs at issue until

the information was specifically requested; it never resolved the issue, however, because, in that

case, the plaintiffs had explicitly requested the information prior to its destruction.  608 F. Supp.

2d at 431.  And in *Healthcare Advocates*, the dispute involved access to temporary cache files,

which were typically deleted after only twenty-four hours.  497 F. Supp. 2d at 640.  Further, the

defendants had preserved screenshots of the website at issue, so they had no reason to believe that the cache files would be needed in any future litigation. *Id.* at 639.

Here, by contrast, the PaperTrail logs were sent to Amazon.com every week, where they were stored for another week. (Logoluso Spoliation Decl., Ex. 4 at 62-63). And it was clear that they would be relevant as early as November 20, 2013, when Skyline sent PilePro a letter referencing the instant lawsuit (which it had filed a few days earlier) and stating that it would take "all appropriate additional legal action including, without limitation, under the Lanham Act" with regard to the infringement warning on the Website. (*Id.*, Ex. 6 at 1-2). Given that page view data was the way to know how many people had actually seen the infringement warning (and that the PaperTrail logs were the only records that included that data), there can be no question that PilePro "should have known that the evidence may [have been] relevant to future litigation" at that time. *Mastr Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec., Inc.*, 295 F.R.D. 77, 82 (S.D.N.Y. 2013); *see also, e.g.*, *Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d 1132, 1144-47 (N.D. Cal. 2012) (finding that the defendant's preservation obligations arose when the plaintiff informed the defendant that some of the defendant's products infringed the plaintiff's patents, not when the plaintiff filed suit, and that the defendant had failed to comply with those obligations when it failed to suspend its auto-delete policy); *Toussie v. Cnty. of Suffolk*, No. 01-CV-6716 (JS) (ARL), 2007 WL 4565160, at *7 (E.D.N.Y. Dec. 21, 2007) (noting that parties have a duty to preserve back-up data).[8]

---

[8]     PilePro's citation to Federal Rule of Civil Procedure 37(e), which provides that "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system," is equally unavailing. (Defs.' Spoliation Mem. 13-14). As Skyline points out in its reply (Pl.'s Spoliation Reply 7), the Advisory Committee Note to that rule makes clear that, in order to demonstrate "[g]ood faith in the routine operation of an information system," a party  may need "to modify or suspend certain features of that

Turning to the second factor, the Court finds that the PaperTrail logs were destroyed with a "culpable state of mind." *Residential Funding Corp.*, 306 F.3d 99 at 107. Significantly, "[i]n this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009); *see also Zubulake*, 220 F.R.D. at 220. PilePro's destruction of the PaperTrail logs was at least negligent, if not grossly negligent. PilePro argues that it did not act with a culpable state of mind because it believed that information about how many people visited the Website would be available through Google Analytics, and "[a] party need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(iii). (Def.'s Spoliation Mem. 16-17). But, as explained earlier, the relevant data was not available through Google Analytics. And, to the extent that PilePro intended to rely on Google Analytics, it was incumbent upon PilePro to confirm that Google Analytics was functioning properly.

PilePro claims that counsel did speak to Garry McShane, the PilePro employee responsible for overseeing the development of the Website, who told him that Google Analytics captured page view information and that "[McShane] had been in the Google Analytics website in the recent past." (Mitchell Spoliation Decl. ¶¶ 5-6). But even accepting that assertion as true — McShane denies having any conversation with counsel about Google Analytics (Decl. Christopher C. Costello Further Supp. Pl. Skyline Steel, LLC's Mot. Spoliation Sanctions (Docket No. 268) ("Costello Decl."), Ex. A at 118-19) — that was not sufficient to fulfill

---

routine operation to prevent the loss of information, if that information is subject to a preservation obligation." Fed. R. Civ. P. 37(f) [now 37(e)], Advisory Comm. Notes to 2006 Amendment; *see also, e.g.*, *Keithley v. Home Store.com, Inc.*, No. 03-CV-4447 (SI) (EDL), 2008 WL 3833384, at *5-6, *11-12, *16 (N.D. Cal. Aug. 12, 2008) (noting that "good faith" may require a party to suspend certain automatic features that would result in the deletion of data, and finding that the defendants spoliated evidence when certain backup tapes were overwritten).

PilePro's obligations.  At the very least, defense counsel had an obligation to monitor the collection of the Google Analytics data.  *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake II*") ("In short, it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."); *see also id.* at 434 (suggesting that back-up tapes relevant to the litigation should have been segregated and placed in storage).  That does not mean, as PilePro suggests, that counsel had "to proofread the automatically generated source code of updates to the Website."  (Def.'s Spoliation Mem. 16).  But, at a minimum, counsel should have confirmed that a PilePro employee looked at the Google Analytics data to ensure that it was actually being generated.

PilePro also argues that it did not have a culpable state of mind because "none of the key players knew of PaperTrail's existence."  (Def.'s Spoliation Mem. 18).  But counsel has an obligation to take "affirmative steps" to ensure that "all sources of discoverable information are identified and searched."  *Zubulake II*, 229 F.R.D. at 432.  Here, PilePro admits that it never contacted anyone at Montrose, the contractor that maintained the Website, or Karin Maake, a consultant who worked on the Website, prior to the discovery that Google Analytics had been turned off in order to implement a litigation hold or to determine whether there was another way to track the number of visitors to the Website.  (*See* Def.'s Supplemental Mem. 6; *see also* Montrose Dep. 48-49 (responding to the question "Have you been asked to keep any documents by anyone in connection with this litigation?" with "I have not been asked to keep or otherwise handle any documents in any particular way"); Mitchell Spoliation Decl. ¶¶ 2-7 (discussing his efforts to ensure that PilePro preserved data before the discovery that Google Analytics had been

turned off, without mentioning Montrose or Maake); Logoluso Spoliation Decl., Ex. 3 at 21-23,

210-12; *see also id.* at 216-17).  Further, PilePro does not deny in its opposition brief or in its

supplemental memorandum of law that it had the ability to ask Montrose or Maake to preserve

the information.  (*See* Pl.'s Spoliation Mem. 16-17 (arguing that PilePro had control over the

PaperTrail logs because it could have asked Montrose to preserve them); Def.'s Spoliation Mem.

6-8 (not rebutting Skyline's argument that it had control over Montrose and Maake); Def.'s

Supplemental Mem. 6-7 (same)).

The final question is whether the PaperTrail logs were relevant to Skyline's case.  Where

the destruction of evidence is found to be willful, courts presume the relevance of the destroyed

evidence.  *See Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 504 (S.D.N.Y. 2013).  But where

the party against whom sanctions are sought engaged only in gross negligence, a court may, but

is not required to, presume the relevance of the evidence, *see Chin v. Port Auth. of N.Y. & N.J.*,

685 F.3d 135, 162 (2d Cir. 2012) ("[A] finding of gross negligence merely permits, rather than

requires, a district court to give an adverse inference instruction."); *Zubulake*, 220 F.R.D. at 221

("[O]nly in the case of willful spoliation is the spoliator's mental culpability itself evidence of

the relevance of the documents destroyed." (emphasis omitted)), and where the destruction was

merely negligent, no presumption of relevance applies, *see GenOn Mid-Atlantic, LLC v. Stone &*

*Webster, Inc.*, 282 F.R.D. 346, 358 (S.D.N.Y. 2012).  Instead, for sanctions — including an

adverse inference instruction — to be warranted, "there must be extrinsic evidence to

demonstrate that the destroyed evidence was relevant and would have been unfavorable to the

destroying party."  *Great N. Ins. Co. v. Power Cooling, Inc.*, No. 06-CV-874 (ERK) (KAM),

2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) (internal quotation marks omitted).  Here,

the PaperTrail files contained information revealing the IP addresses and number of visitors to

the Website.  That information would clearly have been relevant to Skyline.  Indeed, as Skyline points out in its memorandum of law (Pl.'s Spoliation Mem. 21), PilePro argued in its opposition to Skyline's motion for partial summary judgment that Skyline "is unable to identify a single person that actually viewed the statement."  (Def.'s Mem. 8).  Even if only one IP address was useful, therefore, it would have been relevant and helpful to Skyline's case.

For the foregoing reasons, the Court concludes that spoliation sanctions are warranted based on PilePro's failure to preserve the relevant PaperTrail data.  The question becomes what sanction is appropriate.  In general, a court should impose sanctions that are sufficient, but no greater than necessary, to satisfy the purposes of sanctions — namely, to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal quotation marks omitted).  Possible sanctions include "further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)."  *Passlogix, Inc.*, 708 F. Supp. 2d at 420.  Before imposing "severe" sanctions (such as an adverse inference), however, a court must find that the evidence was relevant and that the non-spoliating party was prejudiced; by contrast, a lesser showing can justify lesser sanctions.  *See Orbit One Commc'ns*, 271 F.R.D. at 439-41.  Ultimately, "'[t]he determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.'"  *Zubulake II*, 229 F.R.D. at 430 (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

Here, because there is no evidence that significantly more people visited the Website during the relevant time period than during the time when Google Analytics data was available or that those who visited the site were affected by the infringement warning, the Court declines to impose the severe sanction of an adverse inference.  Instead, assuming the issue is not moot in light of the Court's summary judgment ruling above, the Court will preclude PilePro from arguing that (1) Skyline is not entitled to damages because it cannot identify anyone who saw the infringement warning or determine the effect of that warning on the people that did see it; and (2) significantly fewer people visited the Website during the relevant time period than during the time for which Google Analytics data is available.  *See, e.g.*, *R.F.M.A.S., Inc.*, 271 F.R.D. at 56 (declining to impose an adverse inference but allowing the party to offer testimony about the failure to preserve the relevant evidence).  In addition, the Court finds that monetary sanctions are appropriate to help "restore" Skyline "to the same position [it] would have been in absent" PilePro's failure to preserve the PaperTrail data.  *West*, 167 F.3d at 779.  Accordingly, PilePro shall reimburse Skyline for the fees and expenses incurred in prosecuting this motion for sanctions.  *See, e.g.*, *Toussie*, 2007 WL 4565160, at *9-10 (finding an adverse inference instruction unwarranted, but awarding costs to the moving party).  Skyline shall submit its application for reasonable costs and fees, with supporting contemporaneous documentation, within **two weeks** of the date of this Opinion and Order.  PilePro shall submit any opposition within **three weeks** of the date of this Opinion and Order.  No reply will be permitted absent leave of Court.

## C.    Requests To Seal

Finally, the Court turns to the parties' requests to file certain exhibits under seal.  Skyline seeks leave to seal Exhibits C, F, and G to the Declaration of Matt McLaughlin in support of

Skyline's Motion for Partial Summary Judgment (Docket No. 114).  ("McLaughlin Decl.").
(Pl.'s Nov. 7, 2014 Letter (Docket No. 127) 2-3).  Although the relevant documents are judicial
documents subject to a common law and First Amendment presumption in favor of public
access, *see, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), the
Court finds that Skyline has shown a sufficient basis to justify filing the exhibits to the
McLaughlin Declaration under seal in their entirety.  The exhibits consist largely of "highly
confidential sales information, including pricing information," which is not available to the
public, and emails revealing confidential negotiations between Skyline and one of its customers.
(Pl.'s Nov. 7, 2014 Letter at 2-3).  Accordingly, Skyline's requests for leave to file those
documents under seal are granted.

PilePro seeks leave to seal Exhibit 12 to the Declaration of Tyson K. Hottinger in Support
of PilePro, LLC's Opposition to Skyline Steel, LLC's Motion for Partial Summary Judgment
(Docket No. 142).  (Def.'s Nov. 25, 14 Letter (Docket No. 151) 2).  PilePro explains that Exhibit
12 "is a settlement proposal which contains confidential pricing information."  (*Id.*).  For the
reasons stated above, the Court agrees that the pricing information need not be public.  PilePro,
however, has provided no reason why the rest of Exhibit 12 should remain under seal.
Accordingly, PilePro's request to file Exhibit 12 under seal is granted, but only in part.
Specifically, PilePro shall file an unredacted copy of the exhibit with sealed records and publicly
file the exhibit, with the pricing information redacted, on ECF.

The parties seek leave to file various other documents under seal, but their main — if not
only — explanation for why sealing is appropriate is that the documents were designated as
confidential by one or both parties.  (*See, e.g.*, Docket Nos. 147, 151, 168, 269, 279, 282).  The
Court, however, has previously noted in this very case that "[t]he mere fact that information is

subject to a confidentiality agreement between litigants . . . is not a valid basis in itself to overcome the presumption in favor of public access to judicial documents." (Docket No. 204 at 9). *See, e.g.*, *Dandong v. Pinnacle Performance Ltd.*, 10-CV-8086 (JMF), 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012). Accordingly, the parties' other sealing requests are denied.

## CONCLUSION

For the foregoing reasons, Skyline's motion for partial summary judgment is GRANTED in part and DENIED in part, and its motion for spoliation sanctions is GRANTED. Further, although PilePro has not moved for it, PilePro is GRANTED summary judgment with respect to the issue of bad faith on all claims except for those arising out of the letter sent to Madonna.

Within **one week** of the date of this Opinion and Order, the parties shall publicly file all necessary documents — under seal, in redacted form, or unredacted, as the case may be. They shall also file with the Sealed Records Department all documents to be filed under seal.

Additionally, Skyline shall submit its application for the fees and costs it incurred in pursuing spoliation sanctions within **two weeks** of the date of this Opinion and Order, and PilePro shall submit any opposition by **one week** later.

Lastly, at the conference currently scheduled for April 29, 2015, the parties shall be prepared to discuss: (1) which of Skyline's claims remain in dispute given the Court's rulings on summary judgment and which claims can be dismissed; (2) how the Court's ruling affects the privilege dispute currently under advisement; and (3) the possibility of settlement.

The Clerk of Court is directed to terminate Docket Nos. 102 and 169.


SO ORDERED.

Date:   April 24, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge