```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
SKYLINE STEEL, LLC,                                                     :
                                                                        :
                              Plaintiff,                                :       13-CV-8171 (JMF)
                                                                        :
              -v-                                                       :       OPINION AND ORDER
                                                                        :
PILEPRO, LLC,                                                           :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/15/2015

JESSE M. FURMAN, United States District Judge:

By Opinion and Order dated April 24, 2015, the Court granted in part and denied in part a motion for partial summary judgment filed by Plaintiff Skyline Steel, LLC ("Skyline"), granted Skyline's motion for spoliation sanctions, and, *sua sponte*, granted Defendant PilePro, LLC ("PilePro") summary judgment on the question of bad faith with respect to many of Skyline's claims. *See Skyline Steel, LLC v. PilePro, LLC*, No. 13-CV-8171 (JMF), — F. Supp. 3d —, 2015 WL 1881114 (S.D.N.Y. Apr. 24, 2015) ("*Skyline I*"). Now pending is Skyline's motion for reconsideration of the Court's grant of summary judgment to PilePro, as well as its request for the fees and costs it incurred in prosecuting its motion for spoliation sanctions. The Court, assuming familiarity with *Skyline I* and this heated dispute generally, will address each in turn.

## MOTION FOR RECONSIDERATION

Motions for reconsideration are governed by Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012

WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted). "A district court has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). Such a motion "is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Medisim*, 2012 WL 1450420, at *1 (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)). "'The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). It is well established that the rules permitting motions for reconsideration must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *United States v. Treacy*, No. 08-CR-0366 (RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (internal quotation marks omitted).

As the Court explained in *Skyline I*, this litigation concerns "sheet pile wall systems" — that is, "long structural wall sections with a vertical interlocking system that creates a continuous wall" that can be used to retain soil or water. 2015 WL 1881114, at *1 (internal quotation marks omitted). In particular, it concerns a sheet pile wall system patented by PilePro (the "'543 Patent") and a similar sheet pile wall system manufactured by Skyline known as the "HZM System," which consists — in turn — of three different components: King Piles, intermediary AZ Piles, and connectors. (*See, e.g.*, Pl. Skyline Steel, LLC's Mem. Law Supp. Mot. Partial Summ. J. (Docket No. 103) ("Pl.'s Mem. Supp. MSJ") 3-4). In *Skyline I*, the Court found as a matter of law that Skyline could not show that PilePro had acted in bad faith in accusing Skyline

2

of having infringed PilePro's patent, holding specifically that Skyline could not show that "the claims asserted were objectively baseless — that is, that no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." 2015 WL 1881114, at *6 (internal quotation marks omitted); *see also id.* at *6-9. Skyline argues that the Court erred, in part by not distinguishing among the components of the HZM System.

A.      **The AZ Piles and Connectors**

Skyline first contends that the Court erred by failing to consider that PilePro's infringement allegations could be objectively baseless as to the AZ Piles and connectors, even if they were not objectively baseless as to the King Piles. (Skyline's Mem. Law Supp. Mot. Recons. Regarding Court's Summ. J. Finding PilePro's Accusations Infringement Were Good Faith (Docket No. 335) ("Pl.'s Mem.") 2-7). Skyline argues that, had the Court performed that analysis, it would have found that PilePro acted with objective bad faith as to the AZ Piles and connectors because PilePro always knew that they were not shape-cut and that they were prior art, and thus were not covered by the '543 Patent. (*Id.* at 4-7).[1]

PilePro accused Skyline of infringement in two ways: (1) in communications made directly to Skyline's current and potential customers (the "Customer Communications"), and (2) in a warning posted on the iSheetpile website (the "Infringement Warning"). Skyline's

---

[1]      The parties dispute whether Skyline ever argued in its original motion that PilePro had specifically accused the connectors and AZ Piles of infringing its patent or that the Court should analyze PilePro's good faith (or lack thereof) with respect to accusations concerning the King Piles separately from its good faith with respect to the other components of the HZM System. Skyline could certainly have presented the argument more clearly. (*See, e.g.*, Pl.'s Mem. Supp. MSJ 15-17, 18-20 (making arguments applicable to the HZM System as a whole)). But in light of several statements in Skyline's summary judgment papers referencing the AZ Piles and connectors, the Court will reach the merits of Skyline's arguments. (*See, e.g.*, Pl. Skyline Steel, LLC's Reply Mem. Supp. Mot. Partial Summ. J. (Docket No. 163) ("Pl.'s Reply Supp. MSJ") 8, 10; Pl.'s Suppl. Br. Pursuant Court Order (Docket No. 312) ("Pl.'s Suppl. Mem.") 4, 5 n.6).

3

arguments that the Court should reconsider its grant of summary judgment with respect to the first category of allegations are baseless. Those allegations expressly warned Skyline's customers that PilePro's patent covered the *HZM System*; that is, the Customer Communications did not refer specifically to the AZ Piles or connectors. (Pl. Skyline Steel, LLC's Statement Undisputed Material Facts Pursuant Local Rule 56.1 (Docket No. 104) ("SUF") ¶¶ 53-54, 56-57, 73-74). As the Court previously found — and as it will discuss in further detail below — a reasonable litigant could have believed that at least one of the components of the HZM System, the King Piles, infringed PilePro's patent. The Court is unaware of, and Skyline has failed to cite, any authority standing for the proposition that a party may not allege that a system containing at least one infringing component infringes its patent unless *every* component of that patent infringes.[2] It follows that PilePro's allegations of infringement in the Customer Communications were not objectively baseless as a matter of law.

      Skyline's arguments with respect to the Infringement Warning posted on the iSheetpile website, however, are on more solid ground. The Infringement Warning stated, in relevant part: "This product infringes a US patent owned by PilePro, LLC. . . . If you would like more details and to use this patented system, please email info@pilepro.com." (SUF ¶ 78). Given the uncontradicted evidence that neither the AZ Piles nor the connectors are shape cut, Skyline has a

---

[2]    Plaintiff argues that the Court has already decided that PilePro specifically accused the AZ Piles and connectors when denying PilePro's motion to dismiss based on a covenant not to sue that covered only the King Piles; Skyline even goes so far as to suggest that that holding is law of the case. (Pl.'s Mem. 2-3 & n.1). In that ruling, the Court noted that PilePro had repeatedly accused the HZM System as a whole as infringing, and that the covenant not to sue, which covered only one component of that system, was therefore deficient. (Docket No. 89, at 3-4). That a covenant not to sue covering only one part of the HZM System was incomplete, however, does not mean that PilePro ever represented that any particular component of that system infringed. It simply means that there was nothing to prevent PilePro from accusing the AZ Piles and connectors of infringement in the future.

strong argument that a reasonable litigant would not have expected to prevail on a claim that those two components infringed PilePro's patent.  Further, in support of its motion for partial summary judgment, Skyline submitted evidence that the warning appeared on every webpage concerning any product involved in the HZM system, which would presumably include pages specific to the connectors or AZ Piles.  (*See* Def. PilePro LLC's Mem. Law Opp'n Pl. Skyline Steel, LLC's Mot. Spoliation Sanctions (Docket No. 187) ("Def.'s Spoliation Mem."), Ex. 2 ("Montrose Dep.") 143-44).  Given that, and given the warning's reference to "[t]his product," a reasonable jury could find that the Infringement Warning referred specifically to the AZ Piles and connectors and was objectively baseless.  At the same time, given the warning's reference to "this patented system," a reasonable jury could find that the Infringement Warning referred to the HZM System as a whole, in which case — given the Court's prior decision and discussion below — it would not be objectively baseless.  In other words, there is a factual dispute that precludes summary judgment.[3]  Accordingly, Skyline's motion for reconsideration is granted with respect to the Court's grant of summary judgment to PilePro on any Infringement Warning posted on webpages concerning the connectors and the AZ Piles.

**B.    The King Piles**

Skyline also argues that the Court should reconsider its ruling that PilePro had an objective basis for its claims with respect to the King Piles.  (Pl.'s Mem. 7-23).  Skyline first argues that PilePro disclaimed piles shaped like the King Piles in obtaining the '543 Patent.  To the extent Skyline argues that prosecution disclaimer made PilePro's claim construction

---

[3]     In *Skyline I*, the Court already found that there is a dispute of material fact as to PilePro's subjective bad faith.  *See* 2015 WL 1881114, at *7 n.5 ("[T]he Court need not, and does not, reach the subjective element, except to say that the evidence would support (though not compel) a finding of subjective bad faith on PilePro's part.").

5

unreasonable, the Court has already rejected that argument. *See, e.g.*, *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (stating that a motion for reconsideration should not be used to "relitigat[e] old issues); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig*. No. 03-MD-1529 (JMF), 2015 WL 268846, at *1 (S.D.N.Y. Jan. 21, 2015) (same). To the extent Plaintiff is instead arguing that, because some of Skyline's King Piles have the same shape as those disclosed in Hermes I, PilePro acted with bad faith with respect to those King Piles (*See* Pl.'s Reply 4), that is a new argument. Skyline claims that it raised the argument in its memorandum of law in support of its motion for partial summary judgment. (*See* Skyline's Reply Supp. Mot. Recons. Regarding PilePro's Bad Faith Allegations Infringement (Docket No. 345) ("Pl.'s Reply") 4 (citing Pl.'s Mem. Supp. MSJ 9-10)). The section of the memorandum that Plaintiff cites, however, relates to *noninfringement*, not bad faith; nowhere in its original motion papers did Skyline argue that PilePro may have had objective bad faith with respect to some King Piles even if it did not have objective bad faith with respect to others. Skyline's motion for reconsideration on that issue is thus an improper attempt to "tak[e] a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks omitted).

Next, Skyline argues that the Court should reconsider its ruling that PilePro's proposed claim construction was reasonable, contending that it would have rendered '543 Patent invalid. (Pl.'s Mem. 11-14). Notably, Skyline never advanced that argument in its original motion either. (*See* Pl.'s Mem. Supp. MSJ 14-21; Pl's Reply Supp. MSJ 8-10). Skyline may well be proved right — and will presumably have an opportunity to argue the point in connection with its declaratory judgment claim of invalidity. (Second Am. Compl. (Docket No. 58) ¶¶ 84-86). But, given that Skyline itself did not seek summary judgment on its claim of invalidity, it is hard to argue that the '543 Patent was "*obviously* invalid." *Globetrotter Software, Inc. v. Elan Computer*

*Grp., Inc.*, 362 F.3d 1367, 1374-75 (Fed. Cir. 2004) (stating that a finding of objective baselessness could be supported where the patent was "obviously invalid or plainly not infringed"). In any event, patent invalidity is a complicated question that the Court declines to resolve in a motion for reconsideration.

Lastly, Skyline argues that the Court's grant of summary judgment to PilePro should be reconsidered because PilePro waived attorney-client privilege on the eve of the discovery deadline and one of PilePro's attorneys may have informed the company that the HZM System did not infringe the '543 Patent. (Pl.'s Mem. 14-23).[4] To be sure, one of the criterion for granting a non-moving party summary judgment is that the party against whom summary judgment was granted must have had "an adequate opportunity to come forward with all of its evidence." *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997). In essence, therefore, Skyline argues that because PilePro waived attorney-client privilege so late in the discovery period, it did not have such an opportunity. Of course, Skyline would not have been in that position had it not sought leave to file an early summary judgment motion. In persuading the Court that an early motion was appropriate, Skyline assured the Court that no further discovery would be needed on the question of bad faith. (*See* Docket No. 89, at 69). Skyline's problem is therefore one of its own making.

Nevertheless, even if Skyline could obtain evidence that counsel informed PilePro that the HZM System did not infringe the '543 Patent before PilePro ceased its infringement allegations, the Court's conclusion would remain the same. Put simply, because PilePro proposed a reasonable claim construction under which the HZM System could be found to be

---

[4]   The Court has yet to rule on whether PilePro has in fact waived its attorney-client privilege, but assumes *arguendo* for the purposes of this motion that the privilege was waived and that the evidence of counsel's advice to PilePro is as Skyline has represented it to be.

infringing, its accusations were not objectively baseless, regardless of counsel's advice at the time.  If counsel warned PilePro not to accuse the HZM system of infringement, that would certainly be strong evidence of *subjective* bad faith (which might ultimately be enough in itself to support a finding that this case is "exceptional" for purposes of Title 35, United States Code, Section 285, which does not require a showing of objective bad faith, *see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756-58 (2014)).  But the Federal Circuit has held that "objective baselessness does not depend on the [party's] state of mind at the time the [allegations were made], but rather requires an objective assessment of the merits."  *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1377-78 (Fed Cir. 2011) (internal quotation marks omitted).  Thus, even if a party actually knew long before it filed a lawsuit alleging infringement that its patent did not cover the allegedly infringing product, that knowledge would be not only insufficient to demonstrate objective baselessness, but also "irrelevant" to that issue.  *Id.* at 1377, 1380.  That decision controls here.

In asking the Court to consider as part of the objective baselessness inquiry what advice counsel had given PilePro at the time it made its infringement allegations, Skyline relies heavily on the Federal Circuit's statement in *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed Cir. 1999), that "if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out."  (Pl.'s Mem. 20).  That statement, however, did not distinguish between objective and subjective bad faith, and, in any event, was *dicta*.  *See id.* at 1355 (noting that the question of whether the district court had correctly determined that the defendant had adequately alleged bad faith was not before the court).  Nor is *Precision Links Inc. v. USA Products Group*, 527 F. App'x 852 (Fed Cir. 2013) (unpublished decision), on which

Skyline also relies (Pl.'s Mem. 20-21), on point. In that patent infringement case, following a grant of summary judgment to the defendants, the district court found that the plaintiff's lawsuit was objectively baseless and awarded the defendants attorney's fees. As evidence of its good faith, the plaintiff argued that it had relied on a letter from counsel. The Federal Circuit, however, found that the letter was insufficient because counsel had no evidence of infringement. *See id.* at 856-57. Accordingly, the Federal Circuit agreed with the district court that any reliance on the letter would have been objectively unreasonable. *See id.* Skyline argues that this case demonstrates that pursuing an infringement claim in the face of contrary advice from counsel would be objectively unreasonable. But that is not what the case held. In *Precision Links*, the Court rejected all of the other grounds on which the claims at issue could have been found to be objectively reasonable. The Court therefore never held that, if, as here, there is an alternate ground on which a court could find a claim to be objective reasonable, making a claim without sufficient support from counsel would negate that alternate ground. Indeed, in *Precision Links* itself, the Court found that the one claim for which the plaintiff had proposed a reasonable claim construction was not objectively baseless. *See id.* at 855. Lastly, Skyline relies on *Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed Cir. 2007), in which the Federal Circuit affirmed a jury's finding that infringement was willful where the infringer had ignored the advice of counsel. *Id.* at 811. (Pl.'s Mem. 21). However, as Skyline concedes (*id.* at 21 n.11), the *Acumed* Court never stated whether it was analyzing the objective or subjective component of bad faith. *See* 483 F.3d at 811.

Skyline argues that the Court's interpretation of the objective bad faith requirement would create a doctrine of "accidental good faith," where a party could randomly accuse another's product of infringing its patent but escape a finding of bad faith because the

9

accusations turn out to be reasonable. (Pl.'s Mem. 23; *see also* Pl.'s Reply 5, 10 n.11 (referring to PilePro's claim construction as "ex post")). There is some force to Skyline's argument and, were the Court writing on a blank slate, it might well be persuaded. But the Court is bound by the Federal Circuit, which has made clear that objective baselessness is a separate inquiry. In *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260-62 (Fed Cir. 2008), for example, the Federal Circuit rejected the argument that a party's objective bad faith should be determined "at the outset" of the litigation — that is, as of the time the claims were made, rather than at its conclusion. *Id.* Instead, it held that "a successful outcome of the underlying litigation refutes a conclusion that the litigation was objectively baseless at the outset." *Id.* at 1261. Although PilePro was ultimately unsuccessful here, the same logic applies. Because PilePro had a reasonable litigation position, it does not matter for the purposes of the objective bad faith inquiry whether it had already formulated that position at the time that it made the infringement allegations; that goes to the issue of subjective bad faith. Accordingly, Skyline's argument that the Court should reconsider its decision as to the King Piles is denied.

## ATTORNEY'S FEES AND COSTS

In *Skyline I*, the Court held that although PilePro had no obligation to preserve page view data for the iSheetpile.com web site that was collected using Google Analytics, it had violated its duty to preserve evidence when it allowed other page view data, the "PaperTrail" logs, to be automatically overwritten. 2015 WL 1881114, at *14. The Court declined Skyline's request for a negative-inference jury instruction, but granted it the costs it incurred in prosecuting the spoliation motion. *Id.* at *14-15. In light of that decision, Skyline seeks $138,324.31 in attorney's fees and costs. For the reasons explained below, the Court grants Skyline's request, but reduces the amount of attorney's fees by 25 percent.

As an initial matter, the Court rejects PilePro's argument that a 50 percent reduction in fees is called for because the spoliation motion was only half successful. (Def. PilePro's Mem. Law Opp'n Pl.'s Req. Award Spoliation Related Att'y's Fees (Docket No. 340) ("Def.'s Fees Mem.") 3-5). Although PilePro is technically correct that the Court denied Skyline's motion with respect to the Google Analytics data, PilePro opposed the motion for spoliation in part on the grounds that its belief that Google Analytics data would be available justified its failure to preserve the PaperTrail logs. (*See* Def.'s Spoliation Mem. 16-17). Accordingly, some investigation into the Google Analytics data was necessary in order for Skyline to prevail on the PaperTrail issue. That said, given that the Court did not find spoliation with respect to the Google Analytics data, and that Skyline's counsel has not separated out the time spent pursuing the PaperTrail logs from the time spent pursuing Google Analytics data, the Court agrees that some reduction in fees on this basis is appropriate.

A reduction in fees is also warranted because some of the rates charged by Skyline's attorneys are excessive. For example, Plaintiff's counsel billed approximately $900 an hour for one of its senior counsel's time. Although counsel is an experienced litigator at a nationally recognized law firm, courts in this District have generally approved fees of $500 to $800 an hour for similarly experienced attorneys. *See, e.g.*, *Genger v. Genger*, No. 14-CV-5683 (KBF), 2015 WL 1011718, at *2-3 (S.D.N.Y. Mar. 9, 2015) (approving $615 an hour and citing cases); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 360-61 (S.D.N.Y. 2010) (approving $540 an hour for an experienced attorney that practiced intellectual property law at a large Manhattan law firm, but noting that it was "on the high side," and listing cases); *GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08-CV-6030 (GEL), 2009 WL 2150891, at *7-8 (S.D.N.Y. July 20, 2009) (approving $600 and $650 an hour for experienced intellectual property attorneys).

Skyline also seeks $286 an hour for paralegal time, while courts in this District have generally approved rates of between $100 and $200 per hour.  *See, e.g.*, *SEC v. Yorkville Advisors, LLC*, No. 12-CV-7728 (GBD) (HBP), 2015 WL 855796, at *19 (S.D.N.Y. Feb, 27, 2015) (reducing a paralegal's rate to $150 an hour and noting that the prevailing market rate for a paralegal on a discovery motion in the Southern District of New York is between $100 and $200); *Melodrama Publ'g, LLC v. Santiago*, No. 12-CV-7830 (JSR), 2015 WL 2380521, at *5 (S.D.N.Y. May 19, 2015) (reducing a paralegal's rate from $175 an hour to $100 an hour).  Further, Skyline seeks $475 an hour for an associate's time, which is higher than the rates typically approved in this District.  *See, e.g.*, *Genger*, 2015 WL 1011718, at *2 (stating that New York district courts have "recently approved" rates for law firm associates "in the range of $200 to $450 an hour" and listing cases); *Sprint Commc'ns Co. v. Chong*, No. 13-CV-3846 (RA), 2014 WL 6611484, at *7 (S.D.N.Y. Nov. 21, 2014) (finding $375 an hour to be an unreasonably high rate for an associate with seven years of experience and listing cases).

Finally, as Skyline effectively concedes, some of counsel's records are not entirely contemporaneous.  Specifically, several time entries include time spent both on the spoliation motion and on other, non-compensable tasks.  Counsel hoped to rectify the problem by "conservatively allocat[ing] the time between those other tasks and the spoliation task."  (Decl. Aldo A. Badini Further Supp. Award Att'y's Fees & Costs Connection Mot. Spoliation Sanctions (Docket No. 332) ("Pl.'s Fees Mem.") 3).  That estimation was made after the fact, however, and thus does not satisfy the requirement that attorneys keep contemporaneous records.  *See, e.g.*, *Sheehan v. Metro. Life Ins. Co.*, No. 01-CV-9182 (CSH), 2006 WL 2463550, at *1 (S.D.N.Y. Aug. 23, 2006) (finding that records were not contemporaneous when they were compiled at a later date from other records or sources); *People ex rel. Vacco v. Rac Holding,*

*Inc.*, 135 F. Supp. 2d 359, 364 n.1 (N.D.N.Y. 2001) (finding that records were not produced contemporaneously when counsel had "particularized and added detail" to the records (internal quotation marks omitted)). Accordingly, the Court declines to rely on counsel's estimations, and concludes that an across-the-board reduction is appropriate. *See, e.g.*, *Hnot v. Willis Grp. Holdings, Ltd.*, 2008 WL 1166309, at *6 (S.D.N.Y. 2008) (stating, in the block billing context, that courts will apply an across-the-board reduction to entries that include both compensable and non-compensable tasks).

In short, the Court agrees that an across-the-board reduction in the fees sought by Skyline is warranted because Skyline did not prevail on the Google Analytics issue, some of the rates sought are excessive, and some of the billing entries reflect time spent on both compensable and non-compensable tasks. Taking all of those factors into consideration, the Court concludes that a 25 percent reduction is appropriate. *See Toure v. Cent. Parking Sys. of N.Y.*, No. 05-CV-5237 (WHP), 2010 WL 1372589, at *2 (S.D.N.Y. Mar. 26, 2010) (observing that the "Court can reduce fees by a reasonable amount without providing an item-by-item accounting" (internal quotation marks omitted)). Accordingly Plaintiff's counsel is awarded a total of $103,818.23 in fees and costs.

Two collateral issues remain to be addressed. First, PilePro requests that the payment of any award be delayed until after resolution of a lawsuit against it brought by Shumway Van, its former counsel, and the conclusion of this proceeding. (Def.'s Fees Mem. 5). Given that PilePro's bank accounts have apparently been seized (*id.*), that request is granted. The Court declines, however, to grant PilePro's request that another of its prior counsel, Boies, Schiller & Flexner LLP ("Boies"), be held jointly liable for any fee award, a request to which Boies unsurprisingly objects. (*See* May 20, 2015 Ltr. ("Boies Letter") (Docket No. 342)). As Boies

points out in its letter to the Court, the spoliation motion, which did not seek sanctions from Boies, was filed after Boies had withdrawn as counsel. The firm was never served with that motion, let alone given the opportunity to respond to it. Accordingly, it would be unfair to hold Boies jointly liable for the sanctions at issue here. If PilePro believed that Boies should be held partially responsible for any sanctions imposed, it should have made that argument in its original response to the spoliation motion and requested that the Court allow Boies to submit briefing on the issue. It did not do so then, and it is too late to do so now.

Second, Skyline requests permission to file certain documents in connection with its motion for fees under seal. (May 8, 2015 Ltr. (Docket No. 333); May 22, 2015 Ltr. (Docket No. 343) ("Sealing Mem.")). Although the relevant documents are "judicial documents" subject to a common law and First Amendment presumption in favor of public access, *see, e.g., Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006), the Court finds that Skyline has shown a sufficient basis to justify most of its proposed redactions, but not to file the entire document under seal. Much of the material that Skyline seeks to redact — such as Skyline's standard hourly rates and narrative descriptions discussing legal services other than those at issue here — is of no relevance to the instant motion. As for the information constituting attorney work product and information subject to the attorney-client privilege, "it is well-settled in the Second Circuit that the attorney-client privilege may be a sufficiently compelling reason to defeat the public's right of access to judicial documents." *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 11-CV-1209 (CSH), 2013 WL 4012772, at *5 (D. Conn. Aug. 5, 2013) (citing *Lugosch*, 435 F.3d at 125). That information may therefore be redacted as well. Skyline may not redact, however, the fees that it actually charged for its work on the spoliation motion, as that relates directly to the issue on which the Court was asked to rule. *See Lugosch*, 435 F.3d

at 119-20 (holding that, to determine whether certain information may be sealed, a Court must consider (1) whether the document is a judicial document; (2) the role of material at issue; and (3) the importance of competing considerations).

## CONCLUSION

For the reasons explained above, Skyline's motion for reconsideration is GRANTED in part and DENIED in part. Specifically, the motion is granted with respect to any Infringement Warning posted on webpages pertaining to AZ Piles or connectors, and otherwise denied.

Additionally, Skyline's request for fees and costs is GRANTED, and Skyline is awarded $103,818.23. PilePro is not required to pay that amount, however, until after the conclusion of proceedings in this case and in the case brought against it by Shumway Van.

Further, Skyline's request to file certain materials under seal is GRANTED in part and DENIED in part. Within **one week** of the date of this Opinion and Order, Skyline shall publicly file all necessary documents in redacted form. It shall also file with the Sealed Records Department unredacted copies of the relevant documents.

Lastly, the parties shall confer with respect to whether and how, in light of this Opinion and Order, the Court should proceed with respect to the outstanding privilege waiver dispute, including whether any supplemental briefing is in order. Within **one week**, the parties shall submit a joint letter proposing a process and schedule for resolving any remaining disputes.

The Clerk of Court is directed to terminate Docket No. 334.

SO ORDERED.

Date: June 15, 2015
New York, New York

JESSE M. FURMAN
United States District Judge