UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                :
SKYLINE STEEL, LLC,                                             :
                                                                :
                                       Plaintiff,               :          13-CV-8171 (JMF)
                                                                :
              -v-                                               :          OPINION AND ORDER
                                                                :
PILEPRO, LLC,                                                   :
                                                                :
                                       Defendant.               :
                                                                :
-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/04/2016
```

JESSE M. FURMAN, United States District Judge:

　　This rancorous patent litigation, familiarity with which is assumed, involves two manufacturers of sheet pile wall systems, which are often used to construct temporary walls to retain soil or water.  After Defendant PilePro, LLC ("PilePro") accused Plaintiff Skyline Steel, LLC ("Skyline") of violating one of its patents, Skyline sued PilePro, seeking declarations of non-infringement and patent invalidity as well as damages under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and state law.  Following earlier motion practice and PilePro's dedication of the patent at issue to the public, what remains are Skyline's Lanham Act and state law claims, limited to a narrow range of PilePro's conduct.  PilePro now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Skyline's remaining claims; Skyline does not cross-move for summary judgment, but nevertheless contends in its opposition papers that it is entitled to summary judgment on several of its claims.  Skyline also moves for attorneys' fees in connection with PilePro's violations of its discovery obligations.  For the following reasons, PilePro's motion for summary judgment is DENIED in its entirety, and Skyline's request and motion are GRANTED in part and DENIED in part.

## BACKGROUND AND PROCEDURAL HISTORY

The following undisputed facts are taken from the Court's prior opinions and, where relevant, new material submitted by the parties in connection with this motion.  As noted, Skyline and PilePro both sell the components of sheet pile wall systems.  *See Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 397-98 (S.D.N.Y. 2015) ("*Skyline SJ Op.*").  At the time this suit was filed, PilePro owned United States Patent No. 8,556,543 (the "'543 Patent"), which was issued on October 15, 2013, and covered a particular way of making sheet pile wall components with at least one interlock.  *See id.* at 398.  Skyline is the distributor of a sheet piling system, called the "HZM System," *see id.*, manufactured by ArcelorMittal Commercial RPS in Luxembourg (*see* Decl. Aldo A. Badini ("Badini Decl.") (Docket No. 466), Ex. 9, at 153-54).  The HZM System involves three components: King Piles, AZ Piles, and connectors.  *See Skyline SJ Op.*, 101 F. Supp. 3d at 400.  On October 23, 2013, just eight days after the '543 patent issued, Skyline received a letter from PilePro stating that the '543 Patent "may cover" the HZM System.  *See id.* at 398.  PilePro also sent letters to several of Skyline's potential customers — including one contractor, John Madonna Construction Company ("Madonna"), that had already entered into a contract with Skyline to purchase the HZM System — warning them that Skyline's HZM System might infringe and that PilePro might seek to hold them liable for damages.  *See id.*  Further, from approximately mid-November 2013 through January 24, 2014, PilePro posted warnings (the "Infringement Warnings") on a public website that it operates, www.isheetpile.com, stating that the HZM System "infringes a U.S. Patent owned by PilePro, LLC."  *Id.*

Skyline filed this action on November 15, 2013, seeking a declaration that the HZM System does not infringe the '543 Patent and that the '543 patent is invalid.  (Docket No. 1).  On

December 20, 2013, it amended the Complaint to add Lanham Act and state law claims.  (Docket No. 3).  In July 2014, PilePro filed a motion to dismiss, arguing that the Court lacked jurisdiction in light of an unconditional covenant not to sue it had granted Skyline.  (Docket No. 38; *see* Pilepro's Mem. Law Supp. Mot. To Dismiss Counts One & Two Skyline's First Am. Compl. (Docket No. 39) 1).  In response, Skyline filed a Second Amended Complaint (Docket No. 58) (the "Complaint"), and PilePro filed a second motion to dismiss (Docket No. 62).  On September 23, 2014, after a claims construction hearing, the Court adopted Skyline's proposed definition of "material accumulation" as "material giving the sheet pile component a thickness greater than at its least thickness" (Docket No. 89 ("Hearing Tr."), at 59-60; Opening Claim Constr. Br. Pl., Skyline Steel, LLC (Docket No. 54) ("Skyline's Claim Construction Br.") 13), and giving the phrase "free of material accumulation" its "plain and ordinary meaning" (Hearing Tr. 65-66; Def.'s Responsive Claim Construction Br. (Docket No. 59) ("PilePro's Claim Construction Br.") 24).  The Court also denied PilePro's motion to dismiss, and granted Skyline permission to file an early motion for partial summary judgment.  (Docket Nos. 83-84, 89).

On April 24, 2015, the Court ruled on Skyline's motion for partial summary judgment. *See Skyline SJ Op.*, 101 F. Supp. 3d 394.  The Court granted Skyline's motion with respect to its noninfringement claim, agreeing that the HZM System did not infringe the '543 Patent.  *See id.* at 400-03.  The Court, however, denied Skyline's motion with respect to the issue of whether PilePro had acted in bad faith in accusing the HZM System of infringement (a necessary element of most, if not all, of Skyline's state law and Lanham Act claims), and *sua sponte* granted summary judgment in favor of PilePro on the question of bad faith for all of its conduct except its sending of a letter to Madonna on November 1, 2013 (the "Madonna Letter"), stating that PilePro had "heard that infringing components may currently be in the course of delivery to

[Madonna's] project site." *See id.* at 403-07.  The Court also granted Skyline's motion for spoliation sanctions, and ruled that PilePro was precluded "from arguing that (1) Skyline is not entitled to damages because it cannot identify anyone who saw the infringement warning or determine the effect of that warning on the people who did see it; and (2) significantly fewer people visited the Website during the relevant time period than during the time for which Google Analytics data is available." *Id.* at 412.

Thereafter, Skyline filed a motion for reconsideration (*see* Docket No. 334), which the Court granted in one respect — namely, with respect to PilePro's bad faith in posting the Infringement Warnings about the connectors and the AZ Piles — and otherwise denied. *See Skyline Steel, LLC v. PilePro, LLC*, 13-CV-8171 (JMF), 2015 WL 3739276 (S.D.N.Y. June 15, 2015) ("*Skyline Recons. Op.*").  Further, on July 22, 2015, the Court ruled that PilePro had waived its attorney-client privilege with respect to communications regarding the scope of the '543 Patent, and permitted discovery to be reopened for the limited purpose of discovery relating to PilePro's communications with counsel concerning the '543 Patent.  *See Skyline Steel, LLC v. PilePro, LLC*, 13-CV-8171 (JMF), 2015 WL 4480725, at *3 (S.D.N.Y. July 22, 2015).  On November 25, 2015, after some additional discovery disputes not relevant here (*see, e.g.*, Docket Nos. 452, 458), PilePro filed a notice of its dedication to the public of the '543 Patent; on December 11, 2015, the parties stipulated to dismissal of Skyline's claim seeking a declaration that the '543 Patent is invalid.  (*See* Docket Nos. 432, 453).

As a result of this slightly tortured history, Skyline's remaining claims are: Counts Three and Four, for violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B); Count Five, for unfair competition; Count Six, for tortious interference with contract; Count Seven, for interference with business relations; Count Eight, for violation of New York General Business

Law, Sections 349 and 350; and Count Nine, for violation of California Business & Professions Code, Sections 17200-17210 and 17500.  (*See* Docket No. 58).  PilePro moves for summary judgment on all of those claims.  (*See* Docket No. 446).

## LEGAL STANDARDS

Summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine dispute regarding any material fact.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322.  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).  In ruling on a summary judgment motion, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Summary judgment may be granted against the moving party, even in the absence of a formal motion and without notice to the moving party, if "first, there are no genuine issues of material

fact and the law is on the side of the nonmoving party, and, second, the moving party had an adequate opportunity to come forward with all of its evidence." *Skyline SJ Op.*, 101 F. Supp. 3d at 406; *see Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991); *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997).

## DISCUSSION

PilePro argues that summary judgment is warranted in its favor because a settlement agreement deprives this Court of subject-matter jurisdiction; because it acted in good faith with respect to the Madonna Letter (specifically, because it could have reasonably believed that Skyline was liable for infringement on the basis of importation); because Skyline has shown no damages resulting from PilePro's conduct; and because Skyline fails to meet the elements of certain of its state law claims. Skyline, for its part, contends that it is entitled to summary judgment on all of its claims because of new evidence proving PilePro's bad faith and because PilePro fails to challenge its damages calculations or certain of its state law claims. The Court will address each issue in turn, and then address Skyline's motion for attorneys' fees.

## A. The 2011 Settlement Agreement

Given that subject-matter jurisdiction is a threshold issue, *see, e.g.*, *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170-71 (2d Cir. 2003), the Court begins with PilePro's contention that jurisdiction is lacking in light of a settlement agreement and covenant not to sue that the parties entered in 2011 (the "2011 Settlement Agreement"). (*See* Def. Pilepro's Mem. Law Supp. Mot. Summ. J. ("Def.'s Mem.) (Docket No. 447) 10).[1] Notably, in its opening brief, PilePro itself does not treat the issue as a threshold one — or as

---

[1]     The 2011 Settlement Agreement is a different agreement from the one that the Court addressed in a prior motion to dismiss (which related only to the King Piles and was signed on June 30, 2014). (*See* Docket Nos. 38, 39, 89).

much of an issue at all.  Instead, it relegates the issue to the final section of its brief, and addresses it in a single conclusory paragraph, without citation to a single legal authority.  In its reply brief, PilePro gives more prominence to the issue and actually cites some legal authority in support of its argument — although it is hard to tell whether the increased prominence is a result of greater conviction in the argument or a recognition by PilePro that its other arguments for summary judgment are (for the reasons discussed below) losers.  (*See* Def. Pilepro's Reply Mem. Law Supp. Mot. Summ. J ("Def.'s Reply") (Docket No. 472) 2-5).  In any event, it would be troubling indeed if — after almost three years of contentious litigation and many rounds of motion practice resulting in at least seven substantive opinions filed by the Court — it turned out the Court lacked subject-matter jurisdiction and was compelled to dismiss the case.  Fortunately, PilePro's argument is patently misguided.

As an initial matter, the issue is *not* jurisdictional.  Settlement agreements or covenants not to sue can deprive a court of subject-matter jurisdiction, but only if they eliminate any live case or controversy between the parties.  *See, e.g.*, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995); *Higher One, Inc. v. TouchNet Information Sys., Inc.*, No. 10-CV-1435 (AWT), 2014 WL 4798546, at *4-5 (D. Conn. Sept. 26, 2014).  Applying that principle, the Federal Circuit has held that a covenant not to sue deprives a court of subject-matter jurisdiction to adjudicate declaratory judgment claims, but does not do so with respect to other claims, such as infringement.  *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006); *accord In re Rivastigmine Patent Litig.*, No. 05-MD-1661 (HB) (JCF), 2007 WL 1154000, at *4 (S.D.N.Y. Apr. 19, 2007); *see also Rivastigmine*, 2007 WL 1154000, at *2 ("[D]istrict courts have universally applied Federal Circuit law in patent cases in order to determine whether a court retains subject matter jurisdiction in the face of a covenant by the

plaintiff not to sue.").  Here, there are no pending claims for declaratory judgment, and a live

case or controversy plainly remains with respect to the rest of Skyline's claims.  Moreover,

Skyline alleges that the 2011 Settlement Agreement is void and may not even apply.  (*See* Pl.

Skyline Steel, LLC's Opp'n To Pilepro's Mot. Summ. J. ("Pl.'s Mem.") (Docket No. 463) 22-

23).  Accordingly, the Court plainly has subject-matter jurisdiction.  *See Revolution Eyewear,*

*Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1300 (Fed. Cir. 2009) (holding that a covenant not to

sue did not deprive the court of jurisdiction because the parties still presented a "controversy at a

level of sufficient immediacy and reality" (internal quotation marks omitted)).

    Given that the issue is not jurisdictional, the Court need not and will not even address

PilePro's argument.  As a general matter, a defendant waives any affirmative defense that it fails

to include in its answer.  *See, e.g.*, *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir.

2003).  Consistent with the Federal Rules of Civil Procedure, courts tend to treat the type of

argument PilePro raises here as an affirmative defense.  *See, e.g.*, *Ferguson v. Ferrante*, No. 13-

CV-4468 (VEC), 2015 WL 3404131, at *9 (S.D.N.Y. May 27, 2015) (discussing a settlement

agreement raised as an affirmative defense); *Bagley v. Searles*, No. 06-CV-0480 (PCD), 2007

WL 184720, at *1 (D. Conn. Jan. 19, 2007) (similar); *F.D.I.C. v. Altholtz*, 4 F. Supp. 2d 80, 84

(D. Conn. 1998) (similar); *see also* Fed. R. Civ. P. 8(c)(1) (listing "release" as an affirmative

defense that must be plead).  PilePro, however, did not allege that the 2011 Settlement

Agreement was a bar to Skyline's claims in its Answer — or, for that matter, raise the issue in

any submission to the Court until the present motion.  PilePro did allege *counterclaims* on the

basis of the 2011 Settlement Agreement — counterclaims that the Court later dismissed (on the

ground that they were compulsory counterclaims in another action).  *See Skyline Steel, LLC v.*

*PilePro, LLC*, 13-CV-8171, 2015 WL 999981, at *4-5 (S.D.N.Y. Mar. 5, 2015).  But beyond

8

those counterclaims, PilePro made no reference to the 2011 Settlement Agreement in its Answer at all, and certainly did not raise the agreement as an affirmative defense.  (*See* Def. PilePro, LLC's First Am. Ans. & Counterclaims (Docket No. 119) 14).

To be sure, where an affirmative defense is not alleged in an answer, "a district court may still entertain [it] at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003); *see, e.g.*, *Sompo Japan Ins. Co. of Am. v. Norfolk So. Ry. Co.*, 891 F. Supp. 2d 489, 495 n.8 (S.D.N.Y. 2012) (rejecting the plaintiffs' argument that the defendants had waived the issue of a covenant not to sue by not raising it as an affirmative defense because there was no evidence of bad faith or delay).  But those circumstances are plainly absent here.  First, there are good reasons to find that PilePro is acting in bad faith or with a dilatory motive given that it failed to invoke the 2011 Settlement Agreement as a basis for dismissal until this late stage — the second round of summary judgment practice and the umpteenth round of motion practice.  The Court severed and dismissed PilePro's agreement-based counterclaims a year and a half ago; PilePro had ample time since (not to mention before then) to assert the agreement as an affirmative defense or otherwise bring the agreement to the Court's attention and failed to do so.  Second, and in any event, entertaining PilePro's argument at this late stage would cause Skyline undue prejudice and result in undue delay, as the Court would have to reopen discovery and entertain further motions with respect to the validity and scope of the 2011 Settlement Agreement.

Finally, the validity and scope of the agreement are being litigated in another forum.  (*See* Pl.'s Mem. 22-23).  Thus, if this Court were to rule on the issue, there would be a risk of inconsistent rulings; and if this Court were to await a ruling in the other forum, it would

undoubtedly cause significant delay.  *Cf. Skyline*, 2015 WL 999981, at *4 (noting that the counterclaims for breach of the 2011 Settlement Agreement "are all predicated on the *validity* of the Settlement Agreement . . . .  [W]ere this Court to allow PilePro's counterclaims to go forward, both this Court and the Court in the New Jersey Action would have to determine, as a key threshold matter, whether the Settlement Agreement is, in fact, valid — raising the possibility of inconsistent outcomes and a near certainty of duplicative efforts").  The fact that the issue is being litigated in another forum also means that this Court's refusal to address the issue will cause PilePro little or no prejudice.  Should PilePro ultimately prevail in arguing that the 2011 Settlement Agreement is enforceable, it can presumably seek damages for breach of the agreement in an appropriate forum.  The bottom line is that the existence of the 2011 Settlement Agreement is no basis to delay these proceedings, which are near trial-ready.

**B.  The Madonna Letter**

Turning to the merits, PilePro argues that it is entitled to summary judgment because Skyline cannot prove that it acted in bad faith in sending the Madonna Letter.  (*See* Def.'s Mem. 3-7; Def.'s Reply 7-8).  As the Court explained in its earlier summary judgment opinion, *see Skyline SJ Op.*, 101 F. Supp. 3d at 403, Skyline must prove bad faith in order to prevail on most, if not all, of its claims under state law and the Lanham Act, *see, e.g.*, *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008) ("To prevail on an unfair-competition claim under section 43(a) of the Lanham Act stemming from a patentee's marketplace activity in support of his patent, the claimant must first establish that the activity was undertaken in bad faith."); *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) ("Federal patent law likewise preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent.").  Under Federal Circuit precedent

(which controls here, *see Sanofi-Synthelabo v. Apotex, Inc.*, No. 02-CV-2255 (RWS), 2002 WL 1917871, at *3 n.2 (S.D.N.Y. Aug. 20, 2002)), to prove bad faith, a plaintiff must satisfy two elements.  First, the plaintiff must show that the claims asserted were "objectively baseless" — that is, that "no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent."  *Judkins*, 529 F.3d at 1338 (internal quotation marks omitted); *accord Dominant Semiconductors*, 524 F.3d at 1260.  Second, the plaintiff must prove subjective bad faith, meaning that the "lack of objective foundation for the claim was *either* known *or* so obvious that it should have been known."  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013) (internal quotation marks omitted).  The objective element "is a threshold requirement."  *Judkins*, 529 F.3d at 1338.  That is, "[a]bsent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent."  *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).[2]

PilePro's principal argument is that it did not act in objective bad faith in sending the Madonna Letter because the Madonna HZM Systems arrived in the United States on October 19, 2013 — four days *after* the '543 Patent issued — and Title 35, United States Code, Section 271(g) imposes patent liability on the basis of importation.  (*See* Def.'s Mem. 3-5; Def.'s Reply 7).  In other words, PilePro asserts that a reasonable litigant could have expected success in a claim against Skyline premised on Section 271(g) because "Skyline could have been liable for

---

[2]     The Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which rejected the Federal Circuit's two-part test for whether a case qualifies as "exceptional" for purposes of Title 35, United States Code, Section 285, casts some doubt on the continuing validity of the two-part test for good faith in this context.  *See also Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S.Ct. 1923 (2016) (rejecting the Federal Circuit's two-part test for enhanced damages under the Patent Act).  But neither the Supreme Court nor the Federal Circuit has explicitly disavowed the test to the extent it is relevant in this case.  Further, the parties here do not dispute that the two-part test applies; nor do they contend that the question of bad faith cannot be settled as a matter of law.

infringement for importing into the United States, or selling or using in the United States, a product made by a patented process, regardless of where the process is performed or where the product was ultimately made as long as it was imported or used during the life of the issued patent." (Def.'s Mem. 5). That argument is borderline sanctionable, and certainly without merit. Section 271(g) creates importation liability for products that are "made by a process patented in the United States." 35 U.S.C. § 271(g). Thus, for infringement to be found, "the patent [must] be issued and in force *at the time that the process is practiced and the product is made*." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1319 (Fed. Cir. 2001) (emphasis added), *vacated on other grounds*, 535 U.S. 1109 (2002); *see Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1360 (Fed. Cir. 2007) ("Infringement is not possible under § 271(g) when [parts of] the claimed process are performed before the issuance of the patent."). PilePro does not address this binding precedent — even after Skyline discussed the precedent in its opposition; and the only case upon which PilePro does rely involved a product that indisputably had been made through a process that was patented at the time of manufacture. (*See* Def.'s Mem. 4-5; Def.'s Reply 7). *See Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012) (noting that the product at issue had been "made using the patented process").

In the alternative, PilePro argues that it is entitled to summary judgment with respect to claims relating to the Madonna Letter because there is no evidence that Skyline suffered harm from the letter. (*See* Def.'s Mem. 7-9; Def.'s Reply 7-8). Skyline disputes that, contending that it had to pay Madonna's attorney's fees when Madonna feared that it would be liable for patent infringement and that it suffered economic harm from Madonna's breach of contract and late payment of fees. (*See* Pl.'s Mem. 10-12). Drawing all reasonable inferences in Skyline's favor, as the Court must, the evidence is sufficient to support those contentions. (*See* Pl. Skyline Steel,

LLC's Resp. to Pilepro's Statement of Undisputed Material Facts & Skyline's Statement of

Additional Material Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1 Statement") ¶¶ 146, 148-56;

Decl. Judith Gorog (Docket No. 465) ¶¶ 12-16).  Moreover, the incident may well have cost

Skyline goodwill and future business with the Madonna Company.  At a minimum, the issue of

damages is disputed.[3]  Accordingly, PilePro's motion for summary judgment is DENIED with

respect to claims relating to the Madonna Letter.

        By contrast, the Court concludes that Skyline is entitled to summary judgment on the

issue of bad faith because of new evidence since the Court's earlier summary judgment opinion.

(*See* Pl.'s Mem. 8-9).[4]  In that opinion, the Court found a dispute of material fact because there

was "no evidence in the record that PilePro actually knew when the components were

manufactured and shipped" and because "while it may typically take twelve to sixteen weeks

from manufacture to delivery, there is evidence that that time can be reduced if there are

---

[3]     PilePro argues that Skyline's payments to Madonna are not recoverable under Skyline's
California causes of action because they were voluntary payments or pre-litigation "risk
assessment" costs.  (*See* Def.'s Mem. 8-9).  PilePro cites two cases in support of those
arguments, but neither is persuasive.  In *Western Gulf Oil Co. v. Title Ins. & Trust Co.*, 206 P.2d
643, 648 (Cal. Ct. App. 1949), the Court merely held that the plaintiff could not recover
voluntary payments made *to the defendant* under the terms of their contract, where the payments
were neither coerced nor conditioned on any unfulfilled terms.  In *Two Jinn, Inc. v. Gov't
Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1334 (Cal. Ct. App. 2015), the Court held that the
plaintiff could not recover the costs it incurred in investigating the defendant's activities before
bringing suit.  PilePro does not cite, and the Court has not found, any authority holding that
attorneys' fees paid to a third party because of a defendant's illegitimate threats are not
recoverable under California law.  *Cf. Two Jinn*, 233 Cal. App. 4th at 1334-35 (distinguishing
that case from *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which the Court found
that the plaintiff had suffered an injury because it had to expend resources to counteract the
defendants' unlawful conduct in order to be able to continue its business activities).

[4]     Although the Court would be on firm ground denying Skyline's request for summary
judgment on the ground that it is not entitled to a second bite at the summary judgment apple, the
existence of new — and undisputed — evidence justifies revisiting the issue.  Notably, PilePro
does not take issue with the fact that Skyline requests summary judgment in its favor having
previously been granted leave to file an early motion for summary judgment.

products on the ground and some of the (non-covered) manufacturing steps have already

occurred." *Skyline SJ Op.*, 101 F. Supp. 3d at 404 (quotation marks omitted). Since that

decision, however, evidence has emerged showing that PilePro knew that:

>   (1) the Madonna HZM System was manufactured in Luxembourg (*see* Badini
>        Decl., Ex. 9, at 153-54);
>
>   (2) it took a minimum of twelve, and "typically" at least sixteen weeks for an
>        HZM System going from Europe to California "to be manufactured, prepared,
>        shipped, and delivered" (Badini Decl., Ex. 7, at 209-11 (testimony of Roberto
>        Wendt, PilePro's chief executive officer);
>
>   (3) the Madonna HZM System had arrived in California and was on its way to the
>        Madonna project site by October 30, 2013 (*see* Badini Decl., Ex. 39 (October
>        30, 2013 email to Rob Wendt stating that "the material [for the Madonna
>        project] is coming through Long Beach right now"; *id.*, Ex. 40 (October 30,
>        2013 email from PilePro to German patent counsel stating "[w]e just learned
>        today that another large infringing shipment is just arriving at the US port").

From those facts, which are undisputed, it follows that PilePro knew that the Madonna HZM

System was manufactured before the '543 Patent issued — a conclusion that PilePro does not

even contest. Given that, and the law discussed above, "no reasonable litigant could realistically

[have] expect[ed] to prevail in a dispute over infringement of the patent." *Judkins*, 529 F.3d at

1338. Accordingly, Skyline has established objective bad faith as a matter of law.

The evidence also supports Skyline's contention that PilePro acted in subjective bad faith

in sending the Madonna Letter. As noted, subjective bad faith "requires proof that the lack of

objective foundation for the claim was either known or so obvious that it should have been

known by the party asserting the claim." *Kilopass*, 738 F.3d at 1310. In its prior summary

judgment opinion, the Court did not reach the subjective bad faith question, but noted that at that

stage "the evidence would support (though not compel) a finding of subjective bad faith on

PilePro's part." *Skyline SJ Op.*, 101 F. Supp. 3d at 405 n.5. It is now undisputed that PilePro

knew that the Madonna HZM System could not have been manufactured after the '543 Patent

issued, based on the known place of origin, the known minimum travel time, and the known date of arrival. PilePro therefore knew or should have known that it lacked an objective foundation for its infringement claim. Notably, PilePro does not rebut, or even challenge, that conclusion.

The parties do dispute the involvement of PilePro's outside counsel, Boies, Schiller & Flexner LLP ("Boies Schiller"), in reviewing the Madonna Letter. (*See* Pl.'s 56.1 Statement ¶¶ 204-206; Pl.'s Mem. 9-10; Def.'s Reply 8). It is undisputed, however, that Boies Schiller had not provided PilePro with an infringement analysis when the Madonna Letter was sent, and informed PilePro sometime after October 23, 2013, "that even though they might strongly believe that there was infringement, it would be more prudent to do an infringement analysis, and that sending these letters was creating a very real risk that Skyline would file suit against PilePro and alleging various different kinds of claims, and so in that respect we told them it was probably not a wise business decision." (Badini Decl., Ex. 12, at 131-32). It is further undisputed that Boies Schiller refused to sign the Madonna Letter. (*See* Badini Decl., Ex. 12, at 133-34; Def.'s Reply 8). At a minimum, therefore, it is plain from the record that Boies Schiller did not advise PilePro, before sending the Madonna Letter, that it had a basis for any infringement claim. That provides further support for finding that PilePro knew or should have known that its claims in the Madonna Letter were baseless. In short, Skyline's motion for summary judgment is GRANTED with respect to the issue of bad faith relating to the Madonna Letter.

## C. The Infringement Warnings

PilePro only briefly addresses the Infringement Warning claims, appearing to argue that the claims should be dismissed because of Skyline's failure to provide evidence of damages. (*See* Def.'s Mem. 7-10; Def.'s Reply 5-7). In the Court's prior summary judgment opinion, it

had granted summary judgment in favor of PilePro on the claims (but on different grounds).  *See*
*Skyline SJ Op.*, 101 F. Supp. 3d at 406-407.  Upon reconsideration, the Court agreed with
Skyline that summary judgment was inappropriate as to any infringement warning posted about
the AZ Piles or connectors specifically, because PilePro had known that they were not even
covered by the '543 Patent.  *See Skyline Recons. Op.*, 2015 WL 3739276, at *2.  The Court
concluded, however, there was a factual dispute about whether the warnings' references to "this
product" and "this patented system" would lead a reasonable jury to conclude that the warnings
referred specifically to the AZ Piles and connectors (in which case Skyline would have a valid
claim) or to the HZM System as a whole (in which case Skyline's claims would fail).  *Id.*

PilePro's arguments are without merit.  PilePro asserts that Skyline's lost profits
calculations are speculative, contending that Skyline has not identified a specific customer whose
purchasing decision was affected by the Infringement Warnings and has not shown any sales
history for the HZM System.  (*See* Def.'s Mem. 7-10; Def.'s Reply 5-7).  The former argument is
expressly foreclosed by the Court's sanctions ruling, which precluded PilePro from challenging
Skyline's inability to specifically identify anyone who saw the Infringement Warnings or
determine the warnings' effect on people who did see them.  *See Skyline SJ Op.*, 101 F. Supp. 3d
at 412.  As for the latter argument, Skyline's expert does appear to have had data on Skyline's
sales and profits upon which he relied in forming his opinions, and PilePro does not otherwise
attack his findings or reasoning.  (*See* Badini Decl., Ex. 2 ¶¶ 32-35).  In any event, PilePro raises
its qualms about the expert report for the first time in its reply, and arguments raised for the first
time in a reply memorandum are waived and need not be considered.  *See, e.g.*, *Conn. Bar Ass'n*
*v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Cioffi v. Averill Park Cent. Sch. Dist. Bd.*

*of Educ.*, 444 F.3d 158, 169 (2d Cir. 2006).  PilePro's motion for summary judgment with respect to the Infringement Warnings is therefore without merit and DENIED.

Once again, Skyline argues that summary judgment should be granted in its favor on the Infringement Warnings claims.  (*See* Pl.'s Mem. 14-18).  Skyline offers no new evidence that the Infringement Warnings were posted on pages specific only to the AZ Piles or connectors.  *See Skyline Recons. Op.*, 2015 WL 3739276, at *2.  Instead, relying on evidence that Boies Schiller had advised PilePro not to post the warnings until an infringement analysis was completed, it asserts that PilePro acted in bad faith in posting the Infringement Warnings with respect to not only the AZ Piles and connectors, but also the King Piles.  (*See* Pl.'s Mem. 15-18).  That argument, however, is foreclosed by the law of the case, as the Court previously held (twice, no less) that Skyline could not satisfy the "objectively baseless" prong of the bad faith test in light of the Court's claim construction ruling — "regardless of counsel's advice at the time."  *Skyline Recons. Op.*, 2015 WL 3739276, at *4; *see id.* at *3-5; *see also Skyline SJ Op.*, 101 F. Supp. 3d at 405.  Skyline gives no compelling reason why the third time should be the charm.  The only new authority it cites, *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014), involved accusations of infringement that were objectively baseless because of a total lack of overlap between the patent at issue and the allegedly infringing material; the lack of a pre-suit investigation was merely an additional factor.  *See* 24 F. Supp. 3d at 335-36.  Thus, the Court declines to revisit its prior rulings on bad faith with respect to Infringement Warnings — that is, while Skyline's claims with respect to the AZ Piles and connectors survive, its claims with respect to the King Piles fail because Skyline cannot, as a matter of law, show bad faith.

**D.  Other Claims**

Finally, PilePro argues that Skyline's tortious interference claim should be dismissed because there is no evidence that any of Skyline's business in New York was affected (appearing to assume that New York law applies to that claim) and that Skyline's interference with business relations claim should be dismissed because there is no evidence that PilePro's behavior was independently wrongful (appearing to assume that California law applies to that claim).  (*See* Def.'s Mem. 9-10).  As Skyline notes, however, its tortious interference claim is not necessarily even brought under New York law, as "the breached contract at issue in this case is between Skyline, a New Jersey company, and Madonna, a California company, with respect to a project based in California."  (*See* Pl.'s Mem. 20; SAC ¶¶ 107-15).  And assuming that California law even applies to the interference with business relations claims (as PilePro does), there is indeed evidence that would support a finding that PilePro's conduct was independently improper — certainly with respect to the Madonna Letter, as PilePro acted in bad faith as a matter of law.  *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 746 (Cal. 1995) (noting that courts have interpreted this additional requirement to mean that the defendant's interference "may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession" (internal quotation marks omitted)).  PilePro's motion for summary judgment on these claims is therefore DENIED.

Skyline argues that it is entitled to summary judgment on these claims (and on its Lanham Act claims with respect to the Madonna Letter, discussed in part above) because it has satisfied the elements of each claim.  (*See* Pl.'s Mem. 10 n.10; 21-22).  The Court declines to enter judgment in Skyline's favor on these claims, however, as the question of damages is still disputed and there remain disputed questions of material fact with respect to the Infringement

Warnings (and the other alleged website misstatements, as discussed below).  (*See* Def.'s Reply

5-7).  *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 179 (2d Cir. 2008)

("[W]e emphasize that the fact that a party who has moved for summary judgment in his own

favor has not shown that he is entitled to judgment as a matter of law does not mean that it is

appropriate to grant summary judgment against him.").  Furthermore, the Second Amended

Complaint does not specify with precision which claims are brought in whole or in part on the

basis of the Madonna Letter; nor have the parties had the opportunity to be heard on any choice

of law questions.

Finally, Skyline points out that PilePro neglected to address its claims in the SAC

pertaining to the "Request a Quote" feature and the misleading lead times posted on PilePro's

website.  (*See* Pl.'s Mem. 23-25).  Skyline argues that, because PilePro failed to address those

claims, the Court should enter an injunction against further posting of the misleading statements

on PilePro's website.  (*See* Pl.'s Mem. 25).  But Skyline has not met its burden of satisfying the

elements for a preliminary or permanent injunction — most notably failing to show that it will be

irreparably injured in the absence of an injunction.  *See, e.g.*, *eBay, Inc. v. MercExchange, LLC*,

547 U.S. 388, 391 (2006) (holding that a party seeking a permanent injunction must demonstrate

that it has suffered an irreparable injury and monetary or other legal damages cannot adequately

compensate for the injury); *Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010) (noting that a

showing of irreparable injury is required for preliminary injunctions).  Skyline's request for an

injunction and the remainder of its motion for summary judgment are accordingly DENIED.

**E.  Attorneys' Fees**

That leaves Skyline's application for attorneys' fees in connection with its discovery

efforts related to the e-mails of Dwight Williams, PilePro's former in-house counsel, and a

DropBox account maintained by PilePro.  (*See* Decl. Cristopher C. Costello Supp. Award Att'ys'

Fees & Costs (Docket No 462) ("Costello Decl.")).  On December 10, 2015, the Court granted

Skyline's motion to compel production of those files, finding that PilePro and its counsel had

blatantly violated the Court's orders and failed to meet their discovery obligations.  (*See* Docket

No. 452).  The Court directed Skyline to file a fee application in conjunction with its summary

judgment opposition, which it has done.  Skyline now requests that the Court order PilePro to

pay $103,320.40 in attorneys' fees.  (*See* Costello Decl. ¶ 18).[5]

      Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure states that a district court *must*

order a party who disobeys the court's discovery orders "to pay the reasonable expenses,

including attorney's fees, caused by" that disobedience, "unless the failure [to comply] was

substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

37(b)(2)(C); *see Worldcom Network Servs., Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 143

(S.D.N.Y. 2002) (noting that an award of attorneys' fees is the "minimum sanction contemplated

by Rule 37 in cases where there has been a failure to comply with a court-ordered discovery

obligation").  Prudently, PilePro does not dispute that some award of attorneys' fees would be

appropriate, nor contend that its blatant discovery violations were substantially justified.  (*See*

Def. PilePro's Mem. Law Opp'n Pl.'s Request Award Atty's Fees (Docket No. 473) ("Def.'s Fee

Opp'n") 2).  Instead, PilePro argues that Skyline should be awarded a flat sum of $20,000, in

light of the "excessive billing" it alleges is evident in Skyline's billing records.  (*Id.* at 1-2).

      The Court agrees that some reduction in the amount requested is warranted, but not the

drastic reduction that PilePro suggests.  A small number of the entries submitted do seem either

---

[5]     In December 2015, the Court also ordered that PilePro pay for a forensic expert to obtain
the necessary files.  (*See* Docket No. 458).  PilePro has already agreed to pay the portion of fees
directed to the forensic expert, so it is not addressed here.  (*See* Docket No. 475).

to be overly long for what is essentially a routine task or irrelevant to the discovery motion: for

example, the 1.6 hours billed on October 2, 2015, for filing a letter on ECF, or the work on a

"causes of action" outline billed on October 15, 2015.  (*See* Costello Decl., Ex. 1, at 3-4).  And,

as the Court has ruled before, the billing rates of $900 per hour for senior counsel, $500 an hour

for associates, and $286 an hour for paralegals are beyond what is typically approved in this

District.  *See Skyline Recons. Op.*, 2015 WL 3739276, at *6.  On the other hand, PilePro's

contention that senior counsel's time should be discounted in full is unpersuasive, given that the

discovery sought was extensive and potentially critical to his client's case, making it entirely

reasonable for a senior attorney to get involved in this dispute.  (*See* Def.'s Fee Opp'n 2).  Nor

will the Court discount time referencing a "spoliation" motion, because review of the billing

records suggests that Skyline's counsel sometimes referred to the discovery dispute as a

spoliation issue.  In light of the high billing rates and the few unnecessary billing entries, the

Court concludes that a 20% across-the-board reduction is appropriate.  *See Skyline Recons. Op.*,

2015 WL 3739276, at *7; *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-CV-5237 (WHP), 2010

WL 1372589, at *2 (S.D.N.Y. Mar. 26, 2010) (observing that the "Court can reduce fees by a

reasonable amount without providing an item-by-item accounting" (internal quotation marks

omitted)).  Skyline's motion for attorneys' fees is accordingly GRANTED in the amount of

$82,656.32.  PilePro is directed to pay that amount within thirty days of this Opinion and Order,

a request that PilePro does not oppose.  (*See* Costello Decl. ¶ 19).

## CONCLUSION

For the foregoing reasons, PilePro's motion for summary judgment is DENIED in its

entirety.  By contrast, summary judgment is GRANTED in Skyline's favor with respect to the

question of whether PilePro acted in bad faith when it issued the Madonna Letter.  Skyline's

motion for attorneys' fees is also GRANTED in the amount of $82,656.32, and PilePro is directed to pay that amount **within thirty days of this Opinion and Order**.  Finally, as directed in Docket Nos. 442 and 468, any party who wishes to keep materials in redacted form or under seal must, within **one week of this Opinion and Order**, file a letter brief explaining how doing so is consistent with the presumption in favor of public access.  *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

Per the Case Management Plan and Scheduling Order (Docket No. 24), **within thirty days** of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Rule 26(a)(3) of the Federal Rules of Civil Procedure.  The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Rule 51(a)(2)(A) of the Federal Rules of Civil Procedure.  If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

If the parties are interested in a settlement conference before the assigned Magistrate Judge or through the Court-run mediation program, they shall advise the Court as soon as possible.

The Clerk of Court is directed to terminate Docket No. 446.

SO ORDERED.

Date:   August 4, 2016
        New York, New York

_____
JESSE M. FURMAN
United States District Judge